2007 VT 14

## Abraham J. Madkour, Brenda Madkour, Lester E. Moody, Virginia D. Moody, Jerry D. Goff, Betty-Jean Goff, Ralph B. Welsh, Jr. and Carol B. Welsh, as Trustees of the Carol B. Welsh Living Trust v. John Zoltak and Margaret Zoltak

[924 A.2d 11]

No. 05-447

Present: **Dooley, Johnson, Skoglund and Burgess, JJ., and Eaton, D.J., Specially Assigned**

Opinion Filed March 2, 2007

*Rodney E. McPhee* and *Michelle A. Kenny* of *Kenlan, Schwiebert & Facey, P.C.*, Rutland, for Plaintiffs-Appellants.

*Kevin A. Rambold*, Manchester Center, for Defendants-Appellees.

¶ 1. **Johnson, J.** Plaintiffs Madkours, Moodys, Goffs, Welshes, and Trustees of the Carol B. Welsh Living Trust (collectively, "neighbors") appeal a superior court order granting summary judgment to defendants, Zoltaks. Neighbors own parcels of land in Manchester, Vermont that once comprised the so-called Ames Farm. Zoltaks, who also own a parcel derived from the farm, seek to subdivide and develop the southern portion of their lands. Neighbors brought an action for declaratory judgment in the Bennington Superior Court claiming that restrictive covenants burden Zoltaks' lands, and seeking a determination that Zoltaks are prohibited from developing their lands as proposed. The court below granted summary judgment for Zoltaks — finding that no covenant presently burdens the lands proposed for development — and we now affirm.

¶ 2. The lands owned by neighbors and Zoltaks, together with various parcels owned by other individuals, were originally part of a tract of land known as the Ames Farm. The farm, comprised of approximately ninety acres, was owned by Yetta Isaacs. Isaacs acquired the land upon her husband's death in 1955. Beginning in 1964, Isaacs proceeded to subdivide and convey the entire lands of the Ames Farm via eight separate deeds. The last conveyance, to Zoltaks, occurred in 1999.

¶ 3. The first of the eight conveyances was by warranty deed from Isaacs to Jean Viebrock and Phyllis Binkley on June 27, 1964. Deed one included covenants restricting use of the property to a single-family home for private residential purposes, and prohibiting the purchasers

from subdividing, selling, or leasing the property "in parts smaller than the whole." In addition, deed one provided that:

> The grantor, covenants and agrees that she will not sell or convey any of the lands presently owned by her located in the same meadow as the lands herein described easterly of a line located 400 feet westerly from and parallel with the west line of the lands herein described, or located in the meadow adjoining the meadow in which said lands are located on the north, as presently fenced, without imposing thereon the same or similar restrictions and covenants as set forth herein, together with a provision that the said lands shall not be sold, leased, or subdivided into parcels of less than 2 acres of land.

Plaintiffs Abraham and Brenda Madkour have since acquired the lands conveyed by deed one.

¶ 4. The second and third conveyances of the Ames Farm were by warranty deed from Isaacs to Barbara Haviland and were both dated March 27, 1979. Deeds two and three contained covenants similar to those in deed one, restricting the use of the land to residential purposes and prohibiting the subdivision, sale, or lease of the land "in parts smaller than the whole." In addition, deeds two and three contained a time limit on the restrictive covenants and a promise to impose similar covenants on future conveyances. These provisions read as follows:

> The above restrictions shall expire twenty years from the date hereof, but may be renewed for an additional term of fifteen years by a two thirds vote of all land owners derived from the "Ames Farm". . . .

> Grantor agrees not to convey any remaining lands being a part of said Ames Farm, without imposing the same or similar restrictions.

¶ 5. The fourth conveyance of land derived from the Ames Farm was by warranty deed from Isaacs to Richard J. Kittredge and Clarence J. Haviland on July 20, 1979. Deed four contained restrictions almost identical to those in deeds two and three, including (verbatim) the 20-year time limit and reciprocal covenant transcribed above.

¶ 6. The fifth conveyance was by warranty deed from Isaacs to Green Mountain Mercantile, a commercial enterprise. Deed five was devoid of

residential-use restrictions and included an express disclaimer to that effect:

> The herein conveyed premises are not subject to covenants included in deeds of conveyance to other purchasers of parcels of the so-called "Ames Farm" property. The herein conveyed parcel is zoned for industrial use, and is not subject to any such residential covenants.

¶ 7. The sixth conveyance, on July 2, 1991, was by warranty deed from Isaacs to plaintiffs Abraham and Brenda Madkour and contained ninety-nine-year restrictive covenants proscribing the building of any structures upon the deeded land other than outbuildings to be used in connection with Abraham and Brenda Madkours' residence located in the lands conveyed by deed one. Furthermore, the deed purported to merge the lands of deed six with those of deed one and restricted the subdivision of the newly formed parcel "in portions smaller than the whole."

¶ 8. The seventh deed was conveyed by guardian's deed to Manchester Health Services, Inc., another commercial enterprise. Deed seven contained no covenants.

¶ 9. The eighth — and final — conveyance of the lands derived from the Ames Farm was by executor's deed to Zoltaks on July 13, 1999. Unlike the other five deeds to noncommercial purchasers, deed eight did not include any explicit restrictions but stated that: "[t]his conveyance is made subject to all covenants, easements, utility easements and restrictions of record."

¶ 10. In August 2003, Zoltaks submitted a major development application to the Manchester Zoning Board requesting a permit to subdivide the southern portion of their lands conveyed by deed eight to construct a twelve-lot planned residential development, potentially including duplexes and commercial properties. On March 17, 2004, neighbors filed a complaint in the superior court, together with a motion for preliminary injunction, seeking a declaration that Zoltaks' property is burdened by restrictive covenants, and further seeking an injunction to prevent Zoltaks from subdividing and developing the property in violation of the restrictive covenant. The court denied neighbors' motion for preliminary injunction because Zoltaks' Act 250 permit was on appeal; the permit decision was later affirmed.

¶ 11. Zoltaks moved for summary judgment in November 2004, and neighbors filed their opposition and a cross-motion for summary judgment the following month. On August 3, 2005, the superior court

granted summary judgment to Zoltaks and denied neighbors' motion for summary judgment, finding that Zoltaks' property was not subject to any restrictive covenants that would prevent them from developing their land as proposed. Neighbors now appeal the grant of summary judgment to Zoltaks, basing their appeal on three arguments: (1) the lands burdened in perpetuity in deed one include the lands currently owned by Zoltaks; (2) the twenty-year equitable servitude found in deeds two through four burdens Zoltaks' lands until January 13, 2019; and (3) equity requires that the restrictive covenants be enforced against Zoltaks. Our interpretation of the deed language and consideration of facts presented by neighbors leads us to conclude that summary judgment for Zoltaks was proper. Thus, we affirm.

¶ 12. Our review of a summary judgment decision is de novo. *Mellin v. Flood Brook Union Sch. Dist.*, 173 Vt. 202, 211, 790 A.2d 408, 417 (2001). Summary judgment is appropriate "when the record clearly shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Bacon v. Lascelles*, 165 Vt. 214, 218, 678 A.2d 902, 905 (1996). On summary judgment, the Court must consider the facts presented in the light most favorable to the nonmoving party. See *id.* Furthermore, a motion for summary judgment is appropriate where the movant seeks a declaration of the parties' rights — as is the case here. *Price v. Leland*, 149 Vt. 518, 519-20, 546 A.2d 793, 795 (1988).

¶ 13. Although we disagree with the superior court's interpretation of the covenant language in deed one, taking the facts in the light most favorable to neighbors, we find no genuine issue of material fact and based upon the construction of the restrictive covenants found in deeds one through four, we hold that Zoltaks were entitled to judgment as a matter of law.

¶ 14. Neighbors first argue that the restrictive covenant included in deed one burdens the portion of Zoltaks' property proposed for development. "In construing a deed, [we] must give effect to the intention of the parties if it can be gathered from the language used," *Creed v. Clogston*, 2004 VT 34, ¶ 17, 176 Vt. 436, 852 A.2d 577 (quotations omitted), and if the language of the deed is clear and unambiguous, judgment may be granted as a matter of law. *Addison County Auto., Inc. v. Church*, 144 Vt. 553, 557, 481 A.2d 402, 405 (1984). To determine which property is burdened by the restrictive covenant in

deed one, we must look to the language of the deed itself and consider Isaacs' intent in the context within which she conveyed the property.

¶ 15. In deed one, Isaacs agreed for the benefit of the grantor, grantee and their heirs and assigns, that:

> [S]he w[ould] not sell or convey any of the lands presently owned by her located in the same meadow as the lands herein described easterly of a line located 400 feet westerly from and parallel with the west line of lands herein described, *or located in the meadow adjoining the meadow in which said lands are located on the north, as presently fenced,* without imposing thereon the same restrictions and covenants as set forth herein.

(Emphasis added.) The parties agree that by its language the deed burdens two distinct locations. The first location, "easterly of a line located 400 feet westerly from and parallel with the west line of the lands herein described," they agree, burdens an area adjoining the lands originally conveyed to Viebrock and Binkley in deed one and currently owned by plaintiffs Abraham and Brenda Madkour. That area includes portions of the lands conveyed by deeds three and four in addition to a portion of Zoltaks' lands conveyed by deed eight but not currently proposed for development, and is south of the lands conveyed in deed four that today comprise the Landmark subdivision. It is the second location, "in the meadow adjoining the meadow in which said lands are located on the north, as presently fenced," on which the parties disagree, and that determines whether Zoltaks' proposed development is prohibited due to the restrictive covenant in deed one.

¶ 16. Although the parties diverge completely in their interpretation of which lands comprise those "located in the meadow adjoining the meadow," they interpret the reference to "said lands" similarly. Neighbors construe "said lands" to mean the lands conveyed by deed one. Zoltaks interpret "said lands" to include both the lands conveyed by deed one and those lying "easterly of a line located 400 feet westerly from and parallel with the west line of the lands" conveyed by deed one. Thus, by either construction, the second location burdened by deed one must be in the "meadow adjoining the meadow" in which the lands conveyed by deed one were found "on the north," as fenced at the time Isaacs conveyed the land in 1964.

¶ 17. In granting summary judgment to Zoltaks, the lower court judge concluded that the location of the fence at the time of deed one was immaterial to the construction of the restrictive covenant lan-

guage. She did so, presumably, because she took Zoltaks' interpretation of the deed language to be accurate, and thus determined that the meadow burdened by deed one had to be located "*to* the north." (emphasis added) of the meadow in which "said lands" were located. Such an interpretation of the deed language would necessarily exclude the lands that Zoltaks have proposed for development — which lie in the very south of the original Ames Farm — regardless of where the fence was placed at the time of deed one. The court, however, like Zoltaks, misconstrued the placement of the second location burdened by the restrictive covenant to be "*to* the north" (emphasis added) of "said lands," the lands in deed one, as opposed to being those in the "meadow adjoining the meadow" in which the lands of deed one were located "*on* the north," (emphasis added) as fenced in 1964.

¶ 18. To interpret the language of the deed without the context of the fence as laid out in 1964 is to suggest that adjoining meadows on the Ames Farm were somehow distinguishable from one another without physical demarcation. We find this to be an unreasonable proposition, as one meadow could not be discerned from an adjacent meadow without referencing some boundary line, such as that provided by a fence.

¶ 19. In fact, the meadows were separated by a fence, and its location may be derived from plaintiff Abraham Madkour's affidavit which was not disputed by defendants.[1] That fence divided the lands of the Ames Farm into two parcels, one southern, and one northern. The stretch of fence that split the farm in two sections ran along the northern border of the lands conveyed by deed one to Viebrock and Binkley in a more-or-less east-west direction. As such, we understand Isaacs' reference to adjoining meadows to mean the two individually fenced parcels — one northern, one southern — and find that the "meadow in which said lands are located *on* the north, as presently fenced" (emphasis added) refers to the southern parcel, within which "said lands" — the lands conveyed in deed one to Viebrock and Binkley — were located "on the north" just below the fence dividing the southern parcel from the northern one. The only remaining meadow, then — the "meadow adjoining the meadow" which was burdened by the restrictive covenant

---

[1] A copy of the map included in Abraham Madkour's affidavit (with the thick black line demarcating the location of the fence in 1964) and submitted to the Court on appeal is appended to the end of this opinion for illustrative purposes only.

— must have been the one indicated by the northern parcel, which does not include the lands presently proposed for development by Zoltaks.

¶ 20. Even drawing "all reasonable inferences and doubts" in neighbors' favor, *Mellin*, 173 Vt. at 211, 790 A.2d at 417, we cannot accept neighbors' argument that the restrictive covenant in deed one burdens Zoltaks' lands planned for development in the south of the original Ames Farm. Nor do we find that there remain any genuine issues of material fact regarding the placement of the fence at the time of deed one. Despite the lower court's misinterpretation of the deed language, we find that, given the division of the Ames Farm at the time of deed one, Isaacs intended to burden the "meadow" to the north of the lands conveyed by deed one, as fenced in 1964, by the restrictive covenant, and therefore Zoltaks were entitled to judgment as a matter of law. See *Gochey v. Bombardier, Inc.*, 153 Vt. 607, 613, 572 A.2d 921, 925 (1990) ("[W]e may affirm a correct judgment even though the grounds stated in support of it [below] are erroneous."). Thus, neighbors' first argument on appeal fails.

¶ 21. Neighbors next argue that, at a minimum, deeds two through four create an equitable servitude that prohibits Zoltaks from carrying out their proposed development until January 13, 2019.[2] In deeds two, three, and four Isaacs included a twenty-year restrictive covenant limiting use of the conveyed lands to private residential purposes with "no more than one single family dwelling" to be placed or maintained on each parcel. Isaacs furthermore agreed not to convey any of the remaining lands which were once part of the Ames Farm, "without imposing the same or similar restrictions." The deeds did, however, provide a means for extending the equitable servitude beyond the express twenty-year period, by "a two thirds vote of all land owners derived from the 'Ames Farm.'" Neighbors contend that the language of deeds two through four clearly shows Isaacs' intent to "burden all residential properties with restrictive covenants for at least twenty years from the date of conveyance."

¶ 22. The lower court rejected neighbors' contention, finding that, whether or not the equitable servitude applied, the twenty-year time

---

[2] Neighbors contend that the equitable servitude was meant to be enforced against all future "residential" conveyances of land derived from the Ames Farm, as evidenced by Isaacs' express exclusion of the parcel conveyed by deed five from the restrictions of record because it was zoned commercial. Neighbors further presume that Isaacs intended the same exclusion for lands conveyed by deed seven, as they were also zoned commercial and the deed included no restrictive covenant language.

limit commenced at the time of deed two on March 27, 1979, and therefore expired on March 27, 1999, before Zoltaks purchased their land. While neighbors attempted to invoke the renewal mechanism, they failed to do so in time, filing their Declaration of Renewal in July 1999.

¶ 23. Neighbors now ask us to adopt a construction of the time limit in deeds two through four that would result in each parcel's restrictive covenants expiring at different times. Under this theory, the owners of the lands conveyed by deed two are free (as of March 27, 1999) to develop their land as they please, commercially or otherwise, while the owners of the lands conveyed by deed eight, currently Zoltaks, are restricted from development until the year 2019 — with the possibility that at any point between now and then they may be perpetually restricted at the whim of their neighbors by a two-thirds vote. This strikes us as contrary to the underlying purpose of an equitable servitude.

¶ 24. The only reasonable construction of the twenty-year time limit, we find, is one in which the date of the first deed to include the provision, deed two, sets the date of commencement of the equitable servitude. As such, each land owner was on notice that her property was restricted until March 27, 1999, unless a two-thirds majority of community members chose to renew the restriction by that date, which they did not do. Thus, we reject neighbors' argument that Zoltaks' land is burdened by the equitable servitude described in deeds two through four until January 13, 2019. Rather, as a matter of law, any equitable servitude that may have been enforceable against Zoltaks as land owners within the original Ames Farm expired in March 1999.

¶ 25. Finally, neighbors' argument that the restrictive covenants in deeds one through four must be enforced against Zoltaks on the basis of equitable principles and fairness fails for the same reasons articulated in response to neighbors' first two arguments. Because the restrictive covenant in deed one does not burden the lands that Zoltaks plan to develop and the equitable servitude created by deeds two through four expired several years ago, the fact that neighbors relied on the restrictions placed in the deeds and Zoltaks had notice of those restrictions cannot create current restrictive covenants where none exist. As such, we affirm the superior court's grant of summary judgment in favor of Zoltaks.

*Affirmed.*

¶ 26. **Dooley, J.,** concurring. I join the majority's disposition of neighbors' arguments on the duration of the restrictive covenants in some of the deeds and on the application of equitable principles as contained in ¶¶ 21-25 of the majority opinion. I join the result of its analysis of neighbors' primary argument — that the restrictive covenant in the Viebrock/Binkley deed applies to the land that Zoltaks propose to develop. I agree that the covenant does not apply to the development land. I disagree, however, that there is only *one* reasonable construction of the operative language of the deed and the superior court was erroneous in adopting a different construction from the majority. In my view, the language of the deed is ambiguous, as neighbors argue, but this ambiguity does not help neighbors because their reading of the language is unreasonable.

¶ 27. The superior court found the operative language grammatically difficult, a description that is probably charitable. The burdened land is described as "located in the meadow adjoining the meadow in which said lands are located on the north, as presently fenced." In the majority's view the directional locator "north" describes where the deeded land lies in relation to the rest of the meadow within which it is located. Since it is undisputed that the lands lie in the northerly part of the southern meadow, the other meadow described in the language — that is the "meadow adjoining" — must be the northern meadow.

¶ 28. In the trial court's view, the directional locator "north" describes where one meadow is located in relation to the other. Under that view, the phrase "on the north" modifies "meadow adjoining" and not "lands are located."

¶ 29. In my view, either of these constructions is possible and both work on the ground. The majority presumes the better English construction free of misplaced modifiers because "on the north" modifies the immediately preceding "lands are located." For the superior court, I would say that the word "on" rather than "in" suggests that the language speaks to the relationship of the meadows rather than the land within a meadow.

¶ 30. Contrary to the majority's view, its difference with the superior court is not about where the dividing fence was placed. Neighbors' argument was that there was another fence south of where the dividing fence was placed and south of the land conveyed in the Viebrock/Binkley deed, but north of the land on which Zoltaks propose to place their development. The superior court rightly held that the location of this fence did not need to be determined because the deed

language could not be construed to apply to meadows separated by this southern fence line.

¶ 31. While I disagree with the majority in its holding that there is one right construction of the language that can be determined as a matter of law on summary judgment without extrinsic evidence, I agree that no reasonable construction can be reached that would burden the lands in issue in this case.