**STATE OF VERMONT**
**ENVIRONMENTAL COURT**

|  |  |  |
|---|---|---|
| In re Irish Construction Application | } } } | Docket No. 44-3-08 Vtec |

### Decision on Appellant's Motion for Summary Judgment

This appeal arose after the Town of Bristol Zoning Board of Adjustment ("ZBA") granted in part and denied in part Mr. Kevin Irish's ("Appellant") application to construct a three-sided wraparound porch on the second floor of an accessory apartment/garage structure located on his property at 269 Notch Road. The ZBA granted Appellant's application for a permit to construct the north and south sides of the proposed porch, but refused to permit the east side, concluding that it would violate the fifty-foot waterside setback imposed by § 547 of the Town of Bristol Zoning Bylaws & Regulations. Appellant-Irish appealed to this Court, challenging the ZBA's conclusion that the east side of the porch violates the waterside setback.

With assistance from Benjamin W. Putnam, Esq., who has filed a notice of limited appearance, Appellant seeks summary judgment on Questions 1 and 4 of Appellant's Clarified Statement of Questions. Appellant presents three arguments: that the waterway bisecting his property does not trigger the waterside setback because the waterway is not "significant public waters"; that the plain terms of § 547 impose a setback that is inapplicable to his construction project; and that, in any event, § 547 is unconstitutionally vague because it fails to define "significant public waters."

The Town of Bristol ("Town"), which is represented by William E. Flender, Esq., responds in opposition, arguing that there are disputed material facts regarding the waterway's characteristics; that Appellant's interpretation of § 547 leads to absurd results that undermine its purpose; and that § 547 provides constitutionally sufficient guidance, despite the absence of an express definition for "significant public waters."

Fred Schroeder, a pro se Interested Person, has entered his appearance, but has not filed a response to the pending motion.

## Factual Background

For purposes of placing Appellant's Motion for Summary Judgment into context, we recite the pertinent facts below, which we understand to be undisputed unless otherwise noted:

1. Mr. Irish owns a roughly 2.5-acre lot at 269 Notch Road in the Town of Bristol. The property is located in the Rural Agricultural 1 Zoning District ("RA-1 District").

2. A waterway, the name and navigability of which remain disputed, traverses the eastern portion of Mr. Irish's property and eventually flows into the New Haven River. Mr. Irish's property borders both sides of this waterway. The Town identifies this waterway as Notch Brook and has presented evidence, via an affidavit from one of Mr. Irish's neighbors, that residents often fish in and have kayaked in Notch Brook.

3. In 2005, Mr. Irish obtained a permit to construct a two-story garage on his lot. The northeast corner of the building's foundation measures thirty feet from the waterway. Between the first and second floor on the north side of the structure, Mr. Irish incorporated steel beams parallel to the ground that extend outward for about 12 feet.

4. After Mr. Irish constructed his two-story garage, the Town enacted § 547 of its Zoning Bylaws. Section 547 states that "any new structure, enlargement of existing structure and mining bordering on significant public waters must meet the rear yard setback for the district in which it resides but in no case shall be less than 50 feet." Town of Bristol Zoning Bylaws art. V, § 547 (Mar. 7, 2006) [hereinafter Bylaws]. The rear-yard setback in the RA-1 District is twenty-five feet. Id. art. X, § 1001A.

5. On June 29, 2007, the ZBA approved Mr. Irish's application for an already constructed accessory apartment on the second floor of the garage.

6. Mr. Irish then applied to the Zoning Administrator ("Administrator") for a permit to construct a cantilevered, wraparound porch on three sides of the second story of his apartment/garage structure. It would be elevated fifteen feet from the ground.

7. On the north side, the proposed porch would rest upon and extend to the end of the twelve-foot horizontal steel beams previously incorporated into the structure. On the south and east sides, the proposed porch would extend six feet from the exterior of the second floor of the building. The northeast corner of the proposed porch would measure approximately eighteen feet from the waterway and more than fifty feet from Mr. Irish's nearest property line.

8. On November 21, 2007, the Administrator denied the application in full, explaining that he could not determine from the application materials, whether the south side of the proposed porch would satisfy the front-yard setback imposed by Bylaws §1001A,[1] and whether the north and east sides would meet the § 547 waterside setback. The Administrator did conclude that the waterway bisecting Appellant's property qualified as "significant public waters" "based upon its appearance on the Official Highway Map and the Official Zoning Map and the fact that it drains a significant portion of the Town." Bryant Aff. ¶ 14 (June 16, 2008).

9. Mr. Irish appealed the Administrator's denial to the ZBA, which held public hearing on February 12, 2008. After some discussion about the legal definition of "significant public waters," the ZBA determined that "it doesn't appear that there is a good definition." Bristol Zoning Board of Adjustment, Meeting Minutes, at 1 (Feb. 12, 2008).

10. By its February 19, 2008 Decision, the ZBA announced its determination that the waterway bisecting Mr. Irish's lot qualified as "significant public waters." The ZBA determined that the east side of Mr. Irish's proposed porch would violate the waterside setback. It also concluded, however, that the north side of the porch was not in violation of the Town Bylaws because it would rest atop the previously constructed steel beams and would not increase any preexisting nonconformities. It determined that the south side of the porch satisfied the front-yard setback.

11. The ZBA ultimately granted Mr. Irish a permit to construct the north and south sides of the porch, but not the east side.

12. On March 11, 2008, Mr. Irish appealed the ZBA's refusal to permit the east side of the proposed porch to this Court.

## Discussion

Summary judgment may only be granted when "the pleadings, depositions, [and] answers to interrogatories, . . . together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." V.R.C.P. 56(c)(3). In reviewing a motion for summary judgment, "the Court must consider the facts presented in the light most favorable to the nonmoving party." Madkour v. Zoltak, 2007 VT 14, ¶ 12, 181 Vt. 347.

---

[1] Pursuant to § 1001A, properties in the RA-1 District are subject to an eighty-foot front-yard setback for non-residential uses and a sixty-foot front-yard setback for residential uses. Bylaws art. X, § 1001A.

The currently pending motion raises the principal issue of interpreting how the setback provisions of Bylaws § 547 apply to the waterway that flows across Appellant's property. In addressing this principal issue, we first note that a municipal ordinance is construed in the same fashion as a statute, by according effect to its plain and ordinary meaning, trying to give effect to every word, sentence, clause, and section title. In re Vt. Nat'l Bank, 157 Vt. 306, 312 (1991). We are cautioned, however, not to enforce an ordinance according to the common and ordinary meaning of its words when doing so would lead to irrational results, contradict legislative intent, or undermine the purposes of the ordinance. Town of Killington v. State, 172 Vt. 182, 188–89 (2001) (citations omitted).

The next guiding principal for interpreting an ordinance is the directive from our Supreme Court that a municipal ordinance is presumed to be valid, and that the challenger must fulfill the burden of proving that an ordinance is invalid. McLaughry v. Town of Norwich, 140 Vt. 49, 54 (1981). Trial courts are directed not to interfere with an ordinance unless it is indisputably "unreasonable, irrational, arbitrary or discriminatory." In re Letourneau, 168 Vt. 539, 544 (1998).

With these tenants in mind, we turn our analysis to Appellant's pending summary judgment motion. Appellant's first argument may be addressed with dispatch. We cannot rule as a matter of law at this pre-trial stage of these proceedings that the waterway traversing Appellant's property does not qualify as "significant public waters." As noted in our April 6, 2009 Decision on Multiple Motions, the parties dispute material facts concerning this waterway. In re Irish Construction Application, No. 44-3-08 Vtec, slip op. at 13–14 (Vt. Envtl. Ct. Apr. 6, 2009) (Durkin, J). That dispute continues, with Appellant suggesting that this waterway is an unnamed stream that "has such low water flow during certain summer months that it dries almost to a trickle and can be stepped across by a person," Irish Aff. ¶ 17 (Apr. 21, 2009); and the Town establishing that the waterway is named Notch Brook, flows in part along Notch Road, has served kayakers and fisherman, and has been stocked with fish by state officials. Thus, the parties' dispute continues and cannot be resolved by a ruling on pre-trial motions.

Appellant's second argument, which contends that his proposed construction plan meets the plain meaning of § 547, warrants a brief discussion. The applicable provision of Bylaws § 547 states that "any new structure, enlargement of existing structure and mining bordering on significant public waters must meet the rear yard setback for the district in which it resides but in

- 4 -

no case shall be less than 50 feet." Bylaws art. V, § 547. Appellant reads the phrase "bordering on" to impose a setback on those structures that "lie adjacent to" significant public waters. Appellant's Motion for Summary Judgment, at 10–11 (quoting American Heritage Dictionary (4th ed. 2006)). Because Appellant's porch is eighteen feet removed from the water's edge and fifteen feet above the water's surface, he argues that it does not lie adjacent to the waterway. The § 547 waterside setback is therefore inapplicable to his porch.

Unfortunately, Appellant's argument overlooks the plain meanings of "lie" and "adjacent," which are defined respectively as "to occupy a place" and "close to; next to; lying near; [or] adjoining." The American Heritage Dictionary of the English Language 16, 754 (1st ed. 1979). Applying these definitions to § 547, we cannot determine as a matter of law that Appellant's proposed porch does not occupy a place close to the waterway bisecting Appellant's property.

Appellant next reads § 547 to impose a setback that is measured from a landowner's rear-property boundary, rather than the edge of significant public waters. According to Appellant, the literal terms of § 547 state that structures near significant public waters "must meet the rear yard setback[,] . . . but in no case shall [the setback] be less than 50 feet." Bylaws art. V, § 547. A rear-yard setback is the distance "between the rear lot line and the building rear line." Bylaws art. 1 § 130 (defining "yard, rear"). By these terms, Appellant contends that § 547 does not establish a waterside setback. Rather, Appellant claims that § 547 mandates a minimum fifty-foot rear-yard setback when a structure is in the vicinity of significant public waters.[2] Appellant concludes that his proposed porch complies with this fifty-foot rear-yard setback minimum because he owns property on both sides of the waterway and his rear-lot line is more than fifty feet from east edge of the porch.

We cannot agree with Appellant's construction of § 547 because it leads to absurd results that contradict the purpose of § 547, which is entitled "Waterside Protection." For example, when a setback is measured from the rear-yard boundary—rather than the edge of a significant public waterway—a structure can comply with § 547 no matter how close the structure is to the significant public waterway, even if it rests atop that waterway. In short, while Applicant's suggested interpretation of § 547 may follow a literal interpretation of its words, such a reading

---

[2] Structures on properties in the RA-1 District are normally subject to a twenty-five foot rear-yard setback. Bylaws art. X, § 1001A.

would lead us to what appears to be an irrational result: that only significant public waters that run adjacent to property were to be protected, but that significant public waters that ran through a property were not to be afforded those same protections. We cannot endorse this result, and therefore decline to adopt this and Appellant's remaining challenges to a reading of Bylaws § 547 that imposes a setback from the edge of significant public waterways.

We next turn to Appellant's constitutional challenge to Bylaws § 547. Appellant contends that the Bylaws vest the ZBA with unbridled discretion when determining which waterways trigger the fifty-foot waterside setback because they fail to contain notice of what waterways are regarded as significant public waters. According to Appellant, this broad delegation of decision-making authority is so lacking in adequate notice, guidelines, and standards that it violates the separation of powers required by the Constitution, as well as Appellant's constitutional rights to due process and equal protection.

The Town counters that, even though "significant public waters" is not expressly defined in the Bylaws, § 547 is not unconstitutionally vague because the term "significant public waters" is so common as to be universally understood. We disagree.

To survive a constitutional challenge, a zoning ordinance must be shown to articulate standards that sufficiently guide municipal decisions and give notice to those seeking an understanding of what is regulated. In re Handy, 171 Vt. 336, 344–45 (2000) (citing Town of Westford v. Kilburn, 131 Vt. 120, 124 (1973)). The need for deliberative standards serves three equally important constitutional purposes: (1) ensuring that decision-makers act within the authority delegated to them by legislative bodies; (2) limiting a permitting authority's discretion and guiding it to make consistent decisions; and (3) providing fair notice to landowners as to what constitutes acceptable land uses. Handy, 171 Vt. at 345–47 (citing Gino's of Maryland, Inc. v. City of Baltimore, 250 Md. 621, 244 A.2d 218, 229 (1968); Osius v. City of St. Clair Shores, 344 Mich. 693, 75 N.W.2d 25 (1956); In re Miserocchi, 170 Vt. 320, 325 (2000)). An ordinance that provides inadequate standards to guide decision-making denies a permit applicant due process and equal protection of the law. Handy, 171 Vt. at 345–46.

There is "little unanimity in the cases," however, with respect to the level of specificity necessary to provide decision-makers with constitutionally sufficient guidance. Kilburn, 131 Vt. at 124. On the one hand, a zoning ordinance "should be general enough to avoid inflexible

results," but on the other hand, it "should not leave the door open to unbridled discrimination." Id. at 124–25.

The Supreme Court has repeatedly invalidated ordinances that permit unbridled discrimination: those that completely fail to articulate any standard to guide decisions. See, e.g., Kilburn, 131 Vt. at 126 (invalidating ordinance that "carrie[d] no standard to govern its use"); Handy, 171 Vt. at 349 (invalidating statute that "provide[d] absolutely no standard or guidance"); In re Appeal of JAM Golf, LLC, 2008 VT 110, ¶ 13 (invalidating ordinance "since it provide[d] no standards for the court to apply"). However, the absence of a definition or precise standard immediately within the challenged subsection is not necessarily fatal to the ordinance. "[A] standard sufficient to save the [ordinance] can be general, and can be derived from historical usage, or other parts of the statutory scheme." Handy, 171 Vt. 348–49 (internal citations omitted). Ultimately, an invalid ordinance is one that vests decision-makers with "unbridled discretion" and articulates "no standards to limit the exercise of that discretion." Handy, 171 Vt. at 337.

In support of its argument that § 547 sufficiently guides ZBA decisions concerning waterside setbacks, the Town stresses the historical usage and established legal meaning of the term, "public waters." "Public waters" has long meant boatable waters—i.e., waters capable in their natural state of being used for purposes of transportation and commerce. New England Trout & Salmon Club v. Mather, 68 Vt. 338, 345–47 (1896). The Vermont Legislature has expressly defined "public waters" to mean "navigable waters excepting those in private ponds and private reserves." 10 V.S.A. § 1422(6). "Navigable waters," is defined as "all natural inland lakes within Vermont and all streams, ponds, flowages and other waters . . . which are boatable under the laws of this state." 10 V.S.A. § 1422(4). Presumably, the Town of Bristol was mindful of this legislation when it drafted the Town Bylaws, so we attach this legal meaning to the phrase, "public waters." See Heffernan v. Harbeson, 2004 VT 98, ¶ 9, 177 Vt. 239, 242 (describing the presumption). The fifty-foot waterside setback imposed by § 547 is therefore triggered in part by waters capable of being used in transport.

However, § 547 uses the word "significant" to modify "public waters," imposing a setback from only "significant public waters," not all public waters. To give effect to this distinction, the Town relies exclusively on the customary meaning of the word, "significant." Significant means "[h]aving or expressing a meaning," or "[i]mportant; notable; [or] valuable."

The American Heritage Dictionary of the English Language 1204 (1st ed. 1979). The word "significant," by itself, however, "is vague and takes on its meaning from its context." In re Vt. Nat'l Bank, 157 Vt. 306, 313 (1991). Here, there is no context to provide added meaning to the full phrase used in the Bylaws: "significant public waters." Nothing indicates whether particular public waters are notable, valuable, or meaningful. Public waters could be notable or valuable for myriad reasons: volume, gradient, history, spiritual aura, watershed size, ecosystem role, recreational utility, or commercial viability. Both decision-makers and landowners are left without notice or guidance as to what waterways are or are not to be protected by § 547.

A review of the entire ordinance also fails to yield an adequate standard. The Official Zoning Map, which is incorporated into the Zoning Bylaws by reference in Bylaws § 220, and the Official Highway Map do not assist in identifying the waterways that trigger a waterside setback. The Town maps articulate no standard to identify which public waters are "significant public waters." Most notably, neither the Zoning Map nor the Highway Map specifically identifies "significant public waters" using a legend or other technique. The varying levels of detail between the maps also prevent the Court from discerning a standard merely through observation. For example, the Highway Map identifies a total of four lakes or ponds and seven "single line streams," leaving three streams unnamed. Vt. Agency of Transp., Vt. Gen. Highway Map: Town of Bristol (2004), available at http://www.aot.state.vt.us/Planning/ MapGIS/Town_Maps1.htm. Conversely, the Zoning Map is considerably more detailed than the Highway Map, although none of the lakes, ponds, or streams is classified in the Legend or labeled by name. Bristol Planning Commission, Bristol Town Plan, app., A (Mar. 2006), available at http://www.bristolvt.net/cgi-bin/download.cgi.

The Court has not been made aware of any other sources, either within the Town Bylaws or state statutes, that could provide guidance as to the meaning of "significant public waters." The Bylaws provide no direction to a reader who seeks such a reference.

After reviewing the entire ordinance, the Court is unable to discern a standard that could assist in identifying what qualifies as "significant public waters" and therefore merit the extra setback protections of § 547. As it is written, § 547 gives the ZBA unbridled discretion to identify the waters that trigger the fifty-foot waterside setback contained therein, and the Town Bylaws contain no standards to limit that discretion. This leaves the door open to favoritism, discrimination, and arbitrary decisions, denying applicants due process and equal protection of

the law.[3] Handy, 171 Vt. at 345–46. We are therefore compelled to conclude that § 547 of the Town of Bristol Zoning Bylaws is unconstitutionally vague and therefore unenforceable.

Since the ZBA determined that the only barrier to approving Mr. Irish's request for a zoning permit to construct the easterly portion of his cantilevered porch was the application of Bylaws § 547, we conclude that his application must now be approved as a matter of law. We therefore **GRANT** Appellant Irish's motion for summary judgment on this legal issue.

### Conclusion

For the foregoing reasons, it is hereby ORDERED and ADJUDGED that Appellant's Motion for Summary Judgment is **GRANTED** and his request for approval to construct the easterly portion of his cantilevered porch is **APPROVED**.

These proceedings are hereby remanded to the Town of Bristol Zoning Administrator, solely for the purpose of completing the ministerial act of issuing a zoning permit that authorizes Appellant to construct the easterly portion of the second floor, cantilevered porch that is identified in his application and as approved in this Decision, together with the northerly and southerly portions of the applied-for porch that were approved by the Town of Bristol ZBA. All remaining provisions of the ZBA's February 19, 2008 Decision are hereby **VACATED**.

A Judgment Order accompanies this Decision. This concludes the proceedings before this Court in this appeal.

Done at Berlin, Vermont, this 2nd day of November 2009.

_____
Thomas S. Durkin, Environmental Judge

---

[3] Our reference here should not be regarded as a finding that favoritism, discrimination, or an arbitrary decision has occurred in this proceeding. Rather, we conclude that the absence of notice and clear standards encourages the possibility of such an outcome, thereby evidencing that the ordinance here suffers from a fatal constitutional omission.