STATE OF VERMONT
ENVIRONMENTAL COURT

|                                      |   |                          |
|--------------------------------------|---|--------------------------|
|                                      | } |                          |
| **In re Losier Variance Application**| } | **Docket No. 79-4-08 Vtec** |
|                                      | } |                          |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|                                |   |                             |
|--------------------------------|---|-----------------------------|
|                                | } |                             |
| **In re Losier Notice of Violation** | } | **Docket No. 233-10-08 Vtec** |
|                                | } |                             |

## Decision on Appellant's Motion for Summary Judgment

Appellants John and Paulette Losier ("Appellants") appeal two separate decisions by the Town of Maidstone Zoning Board of Adjustment ("ZBA"). In Docket No. 233-10-08 Vtec, Appellants appeal the ZBA's decision to affirm the issuance of a notice of violation regarding the placement of a stone wall within ten feet of the northern boundary of Appellants' property line, which the ZBA concluded is a violation of the side-yard setback limitation in the Maidstone Lake Zoning District ("Lake District"). In Docket No. 79-4-08 Vtec, Appellants appeal the ZBA's decision to deny Appellants' application for a variance from the twenty-six-foot building height limitation in the Lake District.

Appellants are represented by Oliver L. Twombly, Esq.; the Town of Maidstone ("Town") is represented by William P. Neylon, Esq.; Interested Persons Brenda J. Tilton and Norman A. Vanshaw have appeared in these appeals, representing themselves. Now pending before the Court is Appellants' motion, requesting that the Court enter summary judgment on their behalf in each of the two pending appeals. The Town opposes both of Appellants' summary judgment requests. The Interested Persons have chosen not to submit a memorandum in response to the pending motion.

## Factual Background & Procedural History

The following facts are relevant and undisputed, unless otherwise noted:

1.    Appellants own property in the Lake District in the Town of Maidstone. It appears from the record that Appellants constructed a building on their property, the peak of which measures at least twenty-eight feet from the ground. Docket No. 79-4-08 Vtec concerns a challenge to the legality of the height of this building.

2.     Buildings in the Lake District are allowed a "Maximum Height . . . from ground to peak of roof" of twenty-six feet.  Zoning Bylaw and Subdivision Regulations for the Town of Maidstone, VT art. 2, § 203 tbl. 203.03 (adopted July 8, 2002) [hereinafter Bylaws].

3.     These proceedings seem to have begun after the Town of Maidstone Zoning Administrator ("Administrator") served Appellants with a notice of alleged zoning violation, suggesting that the "east side of [Appellants'] new building is approximately 36 feet from peak of roof to finished grade [and t]he west side of [Appellants'] building is approximately 26 feet from peak of . . . roof to finished grade."  Letter from Craig Sanborn, Zoning Administrator, to John and Paulette Losier (July 6, 2007) [hereinafter referred to as "2007 building height NOV"].

4.     Appellants do not appear to dispute the Administrator's representations that in 2007 Appellants constructed a new building with a roof peak in excess of twenty-six feet.  While unstated, we also presume that Appellants lack a permit authorizing the construction of this new building in excess of twenty-six feet in height.  The record does not reveal whether the Town took further action upon the 2007 building height NOV.

5.     Appellants thereafter submitted an application to the ZBA for a variance from the twenty-six-foot maximum height limitation.

6.     On February 28, 2008, the three-member ZBA conducted a public hearing on Appellants' variance request, but the ZBA adjourned without reaching a decision on Appellants' application.

7.     Sometime after the February hearing, one member of the ZBA resigned his position, leaving a two-member ZBA to act on Appellants' variance request.

8.     On March 6, 2008, the two remaining ZBA members completed their deliberations on Appellants' variance request.  No formal vote was taken, but the two members reached a consensus to deny Appellants' application.  They did not cause minutes from their deliberative meeting to be kept, but did provide a brief "notation" to memorialize their decision.[1]

9.     Appellants received notice of the ZBA's decision on April 7, 2008, which they appealed to this Court on April 28, 2008.

10.    Docket No. 233-10-08 Vtec concerns a stone wall Appellants already constructed along a portion of their property boundary.

---

[1] The date on which the notation was created is unclear from the present record.  Nevertheless, the parties do not dispute that the two-member ZBA resolved to deny Appellant's application on March 6, 2008.

11.    On July 15, 2008, the Administrator issued a notice of alleged zoning violation to Appellants ("2008 stone wall setback NOV"), in which the Administrator alleged that Appellants' stone wall was a "structure" within the meaning of the Bylaws and therefore subject to the setback limitations for the Lake District.

12.    The minimum setback dimension allowed for "each side yard" in the Lake District is ten feet.  Bylaws § 203 tbl. 203.03.

13.    Appellants appealed the 2008 stone wall setback NOV to the ZBA, which the ZBA affirmed on September 16, 2008.

14.    After Appellants appealed to this Court on October 15, 2008, the two Dockets were consolidated.

## Discussion

By their motion, Appellants suggest that the material facts, even when viewed in a light most favorable to those opposing their motion, support a legal conclusion that they are entitled to judgment as a matter of law in each of these two consolidated appeals, thereby making a trial unnecessary.    Rule 56 of the Vermont Rules of Civil Procedure, made applicable to Environmental Court proceedings by V.R.E.C.P. 5(a)(1), directs that summary judgment may only be granted when "the pleadings, depositions, [and] answers to interrogatories, . . . together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law."  V.R.C.P. 56(c)(3).  In reviewing a motion for summary judgment, "the Court must consider the facts presented in the light most favorable to the nonmoving party."  Madkour v. Zoltak, 2007 VT 14, ¶ 12, 181 Vt. 347.  With this legal backdrop, we begin our review of Appellants' assertion that summary judgment is appropriate in each of the two pending appeals.

## I.    2008 Stone Wall Setback NOV (Docket No. 233-10-08 Vtec)

We first address Appellants' challenge to the 2008 stone wall setback NOV, which is the subject of Docket No. 233-10-08 Vtec.  Appellants assert in their pending summary judgment motion that the side-yard setback does not apply to their stone wall because the wall is not a building.  The Town counters by arguing that the side-yard setback applies not only to buildings, but also to structures, including Appellants' stone wall.  The parties' legal dispute causes this Court to search through the Bylaws for provisions that provide notice that the ten-foot side-yard setback applies to stone walls along boundary lines.

3

We are guided by several well-established rules when interpreting a municipal land use regulation. First, the familiar rules of statutory construction generally apply to interpretations of zoning ordinances. In re Casella Waste Management, Inc., 2003 VT 49, ¶ 6, 175 Vt. 335, 337 (citing In re Weeks, 167 Vt. 551, 554 (1998)). Ordinances are construed "according to their plain and ordinary meaning, giving effect to the whole and every part of the ordinance." In re Stowe Club Highlands, 164 Vt. 272, 279 (1995). If the plain and ordinary meaning "resolves the conflict without doing violence to the legislative scheme, there is no need to go further." Casella, 2003 VT 49, ¶ 6 (quoting Lubinsky v. Fair Haven Zoning Bd., 148 Vt. 47, 49 (1986)). However, enforcing land use regulations according to their plain meaning is disfavored when doing so leads to irrational results, contradicts legislative intent, or undermines the purposes of the ordinance. Town of Killington v. State, 172 Vt. 182, 188–89 (2001) (citations omitted). Lastly, we are directed to decide any uncertainty in favor of the landowner, given that "zoning ordinances are in derogation of common law property rights." In re Nott, 174 Vt. 552, 553 (2002) (citing Weeks, 167 Vt. at 555). These rules of interpretation guide our analysis of Appellants' summary judgment requests in each of the pending Dockets.

The Maidstone Bylaws mandate that "each side yard" in the Lake District must contain a setback of at least ten feet. Bylaws § 203 tbl. 203.03. A side yard is defined as the "[y]ard between the principal building or accessory building and a side lot line." Bylaws § 602 (defining "yard, side"). Therefore, table 203.03 of Bylaws § 203 imposes a ten-foot side-yard setback from any "principal building or accessory building" on a parcel of land.

The heart of the Court's analysis involves the meaning of these two terms. A "principal building" is "[a] building in which is conducted the main or principal use of the lot on which such building is located." Bylaws § 602. A "building," in turn, includes "[a]ny structure for the shelter, support or enclosure of persons, animals, chattels or property of any kind." Id. An "accessory building" is not defined in the Bylaws, but the Town has directed the Court to the definition of "accessory use" for guidance. The Bylaws define an "accessory use" as "[a] use or structure on the same lot with, and of a nature customarily incidental and subordinate to, the principal use or structure" on a parcel of land. Id. A "structure," in turn, includes "[a]nything constructed or erected with a fixed location on the ground or attached to something having a fixed location on the ground," including "signs, buildings, swimming pools, and mobile homes." Id.

4

The Town argues that the ten-foot setback in table 203.03 applies to structures in addition to buildings because the definitions of "building" and "accessory use" encompass structures. The Town then concludes that Appellants' stone wall is a structure under the Bylaws and is therefore subject to the ten-foot setback. For the reasons detailed below, we disagree with the Town's interpretation of table 203.03 and conclude that Appellants' stone wall is not subject to the side-yard setback limitations referenced in Bylaws § 203.

The plain language of Bylaws table 203.03 mandates a ten-foot side-yard setback from a "principal building or accessory building." We cannot discern how the Bylaws as written provide notice to a property owner that something other than a principal or accessory building must respect a ten-foot side-yard setback. A land use regulation that fails to give a landowner "fair notice of what . . . can and cannot [be done] with the land" violates constitutional rights to due process. In re Handy, 171 Vt. 336, 347 (2000). We find it particularly troubling when applied to the facts before us, given that stone walls along boundary lines are an historical practice that pre-dates all formal land use regulation in Vermont. See generally Robert Sanford et al., Stonewalls and Cellarholes: A Guide for Landowners on Historic Features and Landscapes in Vermont Forests 24 (1995), available at http://www.historicvermont.org/programs/ stonewall%20and%20cellarhouse_pub_screen.pdf.

The Town's analysis, justifying that setback limitations apply to all "structures," appears strained. Even though the definitions of "building" and "accessory use" both refer to structures, structure is not synonymous with building. It is clear from the definition of building that only certain structures qualify as buildings: structures that provide "shelter, support, or enclosure." Bylaws § 602. A single stone wall is not a structure designed to shelter, support, or enclose. The Town suggests that all walls and fences are designed to enclose, yet to fit the definition of "enclose," every stone wall or fence would have to "surround on all sides; . . . fence in; [or] close in" something. See The New American Heritage Dictionary of the English Language 430 (1st ed. 1979) (defining "enclose"). A stone wall, such as Appellants', which only runs along a portion of a boundary line and no further, would not fit the Town's expanded definition of "structure."

Even if we were to conclude that Appellants' stone wall is a structure within the meaning of the Bylaws, it is not a building, which are the only structures for which the Bylaws provide notice of being applicable to setbacks. Other "structures," including single stone walls such as

5

the one constructed by Appellants here, are spared from the obligation to comply with the ten-foot side-yard setback Bylaws § 203 imposes on principal buildings and accessory buildings.

We therefore conclude that the 2008 stone wall setback NOV has no legal foundation in the Bylaws. We therefore **VACATE** this NOV and **GRANT** summary judgment to Appellants in Docket No. 233-10-08 Vtec.

## II.    Building Height Variance Request (Docket No. 79-4-08 Vtec)

Appellants have also appealed the ZBA's denial of their application for a variance from the twenty-six-foot height limitation imposed on buildings in the Lake District. Appellants argue that their variance request should be deemed approved because the ZBA failed to issue a valid decision within forty-five days after adjourning the February 28 hearing. For the reasons more particularly detailed below, we decline to apply the deemed approval remedy to these circumstances.

A municipal panel must issue a decision within forty-five days after adjourning a public hearing concerning conditional use review, variances applications, or administrative officer appeals. 24 V.S.A. § 4464(a)–(b). The "failure of the panel to issue a decision within this period shall be deemed approval and shall be effective on the 46th day." Id. § 4464(b)(1).

This appeal presents a certain twist on the facts that usually support application of the deemed approval doctrine. Appellants cannot argue here that the ZBA failed to issue a timely decision since Appellants received notice of the denial on April 7, 2008, which was within the forty-five-day window. Rather, Appellants argue that the ZBA's decision was invalid and ineffective because the ZBA, then having only two members, was not properly constituted. Under state law, a "board of adjustment for a rural town or an urban municipality shall consist of not fewer than three nor more than nine persons." Id. § 4460(b). Appellants therefore argue that the decision rendered by the two-member ZBA is null and void in law and fact and, as a consequence thereof, this Court must deem Appellants' variance application approved as a matter of law.

Our Supreme Court has instructed that the remedy of deemed approval should only be applied conservatively. See In re McEwing Servs., LLC, 2004 VT 53 ¶ 21, 177 Vt. 38. It has "cautioned [trial courts] against using the deemed approval remedy beyond its purpose 'to remedy [zoning board] indecision and protracted deliberations.'" In re Newton Enters., 167 Vt. 459, 465 (1998) (quoting In re Fish, 150 Vt. 462, 464 (1988)) (second alteration in original).

6

Acknowledging that the deemed approval doctrine has the potential "to transform a 'negative decision [of the board] into a positive one,'" the Court advises trial courts to reserve the remedy for cases where it "clearly implements the statutory purpose." McEwing, 2004 VT 53 ¶ 21 (quoting Newton, 167 Vt. at 465) (alteration in original). To this end, the Supreme Court has consistently declared that technical defects in the decision-making process do not warrant the application of deemed approval. Id.; see, e.g., Newton, 167 Vt. at 465–66; Leo's Motors, Inc. v. Town of Manchester, 158 Vt. 561, 564–65 (1992); Hinsdale v. Village of Essex Junction, 153 Vt. 618, 625 (1990); Fish, 150 Vt. at 465.

The Supreme Court has previously rejected the remedy of deemed approval when presented with facts similar to those in the matter currently before this Court. In Newton, an applicant sought a zoning permit from the seven-member Town of Fairlee Zoning Board of Adjustment. Newton, 167 at 461. At the hearing, two members were absent and one member abstained. Id. When a motion was made to deny the application as presented, only three of the four members present voted in favor of denial. Id. As a result, the decision did not receive a majority vote as required by 24 V.S.A. § 4462(a).[2] Id. at 464. On appeal, the Environmental Court declared invalid the vote to deny the application and therefore reasoned that the deemed approval remedy must apply, given that no valid decision had been rendered. Id. at 463–64.

The Supreme Court did not disturb the lower court's determination that the ZBA's vote was deficient and therefore void. But the Supreme Court reversed the application of the deemed approval remedy, reasoning that such an application brought about "a perverse result unrelated to the statutory purpose" of 24 V.S.A. § 4464(b)(1). Id. at 465. The Court emphasized that the established purpose of the deemed approval remedy was to discourage "indecision or excessive deliberation" and that its application in Newton "turns a negative decision into a positive one with no finding that the landowner meets the requirements of the zoning ordinance." Id. The Supreme Court completed this portion of its analysis by stating that the deemed approval remedy should not be applied "in this wooden fashion." Id.

The directive in Newton and the absence of a specific directive in 24 V.S.A. § 4460(b), coupled with a review of the present record, counsels against applying the remedy of deemed

---

[2] This Court recalls a practice point gleaned from Newton by municipal attorneys to recommend that a municipal panel's motion always be framed in the affirmative; that the motion should pose the question of whether an application should be approved, even when the consensus is that the application should fail. This procedure increases the possibility of clarity in a municipal panel's decision.

7

approval to the matter currently before the Court. First, the record contains no facts suggesting that the Maidstone ZBA was either indecisive or entered protracted deliberations. The ZBA denied Appellants' variance application in a timely manner, although the Board that did so was not properly constituted. Applying the remedy of deemed approval would therefore fail to serve the statutory purpose.

Second, the <u>Newton</u> Court noted that ZBA member shortages due to absences and abstentions are not unique. <u>Id</u>. We understand ZBA resignations to be similarly not unique, particularly given the reliance in Vermont upon volunteers to staff municipal boards. Further, we know of no statutory directive that compels the deemed approval remedy merely because a board was improperly constituted.

Third, the <u>Newton</u> Court also supported its conclusion by noting that the pending application could not have received sufficient votes for approval, even if the absent members participated in the decision. <u>Id</u>. at 465–66. In effect, the <u>Newton</u> Court held that a statutory defect will not facilitate the remedy of deemed approval when curing the deficiency will not change the result. Here, the two voting members of the ZBA reached a consensus to deny Appellants' application. Even if the third member of the Maidstone ZBA had not chosen to resign, and even if we presume that he would have voted in favor of Appellants' application, the vote on the application would have failed for lack of a majority of votes in favor of the application. Just as in <u>Newton</u>, curing the statutory defect would not change the outcome.

While the ZBA committed other errors in the manner in which it took a vote, and the manner (or absence) of a record on how it took a vote, the facts presented here do not overcome the cautions against application of the deemed approval doctrine that the <u>Newton</u> Court expressed. Applying the remedy of deemed approval would directly contravene the doctrine's purpose and transform a negative decision into a positive one. We therefore are compelled to **DENY** Appellants' motion for summary judgment, since the applicable law does not direct that their request for a building height variance should be approved as a matter of law.

## <u>Conclusion</u>

For all the reasons more fully discussed above, we **GRANT** Appellants' motion for summary judgment in Docket No. 233-10-08 Vtec, concluding that their stone wall does not constitute a zoning violation. The 2008 stone wall setback NOV is therefore **VOIDED** and

judgment is rendered in Appellants' favor. A Judgment Order accompanies this Decision, thereby marking the end of the current proceedings before this Court in that appeal.

In Docket No. 79-4-08 Vtec, we **DENY** Appellants' motion for summary judgment regarding the request for a variance from the twenty-six foot height limitation. That appeal shall proceed to trial on Thursday, November 19, 2009, as already scheduled.

Done at Newfane, Vermont, this 5th day of November 2009.


_____

Thomas S. Durkin, Environmental Judge