Denio v. State of Vermont, No. 335-9-10 Bncv (Hayes, J., Sept. 29, 2011)

[The text of this Vermont trial court opinion is unofficial.  It has been reformatted from the original.  The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT

SUPERIOR COURT
Bennington Unit

CIVIL DIVISION
Docket No. 335-9-10 Bncv

Christopher Denio,
  Plaintiff,

  v.

State of Vermont and Vermont
Agency of Transportation,
  Defendants

DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

This case concerns defendants' motion for summary judgment and plaintiff's cross-motion for partial summary judgment in an action brought by Plaintiff Christopher Denio against the Defendants Vermont Agency of Transportation (AOT) and State of Vermont. Plaintiff alleges that when defendants constructed the Northern Bennington Bypass, they condemned certain lands to which plaintiff owns mineral rights.  He seeks compensation for the taking.  The material facts of the case are not in dispute.  Both parties agree that if plaintiff owns the mineral rights in question, he is entitled to proceed to a compensation hearing.  The only question before the court is whether plaintiff does, in fact, own the mineral rights he claims to own.

**Relevant Law**

When interpreting a deed under Vermont law, a court will first look to the plain language of the deed.  If the plain language is unambiguous, the court will accept its meaning

and look no further.  See *Kipp v. Estate of Chips*, 169 Vt. 102, 105 (1999) ("[T]the court must accept the plain meaning of the language and not look to construction aids if the language is not ambiguous.").  If any language in the deed is ambiguous, the court will look to the language of the deed in its entirety, and, if the ambiguity still exists, to extrinsic evidence.  *Id*.  Provided that the language of a deed is "clear and unambiguous, judgment may be granted as a matter of law."  *Madkour v. Zoltak*, 2007 VT 14, ¶ 14, 181 Vt. 347 (citing *Addison County Auto., Inc. v. Church*, 144 Vt. 553, 557 (1984)).

Generally speaking, the severance of the mineral rights from the surface creates "separate and distinct estates . . . which are held by separate and distinct titles." 53A Am. Jur. 2d Mines and Minerals § 159.  "The mineral estate possesses all incidents and attributes of an estate in land."  *Id*.  In other words, the severance of mineral rights from surface rights turns one estate in land into two.  See *In re Petition of Doering*, 165 Vt. 603, 504–05 (1996) (explaining that "[i]t is long settled in Vermont that minerals and mining rights can be severed from a property to form a distinct possession and different inheritances from the surface") (quotation omitted); see also *N.A.S. Holdings, Inc. v. Pafundi*, 169 Vt. 437, 446 (1999) (explaining that the opening of a quarry on a parcel of land can constitute adverse possession of the mineral rights to that land, but only if the mineral rights have not previously been severed). It is therefore important to track the separate chains of title regarding the surface rights and mineral rights for these parcels.

**Analysis**

The relevant portion of the chain of title in this case begins with Vermont Kaolin Corporation (VKC), which as of 1965 owned nine relevant parcels of land in Bennington County.

In a warranty deed dated August 20, 1965, VKC granted Parcels 1-3 to The Furnace Valley Corporation (FVC).  In the same deed, VKC granted to FVC all of the mineral rights to Parcels 2, 4, 5, 6, and 7 (hereinafter "the mineral estate").  It is undisputed that only Parcels 4–7 were affected by the construction of the Northern Bennington Bypass.  The 1965 deed is the first document that severs the mineral estate from the surface rights of the parcels.

In a separate quit-claim deed dated April 7, 1967, VKC conveyed two additional parcels of land in Bennington County to FVC.   Neither of these parcels was affected by the construction of the Bypass.

In a quit-claim deed dated November 18, 1979, FVC transferred to the Yara Engineering Corporation (YEC) "[a]ll lands *and interests in lands* in [the towns of Bennington and Shaftsbury], title to which was formerly held by Vermont Kaolin Corporation, including . . . those properties described in [the 1967 deed and 1965 deeds]."

The question at this point is whether the 1979 deed granted the mineral estate previously held by VKC.  The 1979 deed refers back to both the 1967 and 1965 deeds by book and page number, and its plain language grants *all lands and interests* held by FVC in Bennington and Shaftsbury.  The meaning of "interest in land" includes mineral rights.  See Black's Law Dictionary 1015 (8th ed. 2004) (explaining that the terms "mineral rights" and "mineral interests" are synonymous).  The 1979 deed thus conveyed both the lands and the mineral estate to YEC.

On August 31, 1981, Frederick Gerken, as trustee, acquired title to the property described in the 1979 deed through a tax sale.  The description of the property in the 1981 report of tax sale is identical to the language of the 1979 deed – that is, it includes in its

description of what is conveyed "[a]ll land and interests in lands in said Towns (Bennington and Shaftsbury), title to which was formerly held by Vermont Kaolin Corporation," Including the properties described in the 1967 and 1965 deeds. Since the 1979 deed did, in fact, grant both the land and the mineral estate to YEC, the identical language in the report of tax sale also conveyed all mineral rights described in those deeds.

In 1987, Mr. Gerken brought a quiet title action to determine the ownership of "certain parcels of real property in the Towns of Bennington and Shaftsbury." The judgment order refers only to land, and not to any mineral estate, and the complaint in the case reads in relevant part as follows: "The first parcel of land is located in Shaftsbury, Vermont and consists of 45 acres. The second parcel of land is located in Bennington, Vermont and consists of 166 acres. The parcels are hereinafter referred to as 'the land.'" Both of these descriptions reference the property the trustee acquired through the tax sales from Bennington and Shaftsbury. In the judgment order issued on August 14, 1987, the court quieted the title to the "parcel of land In Shaftsbury" and "a Bennington parcel of land," acquired by the trustee, Frederick Gerken, by tax sale from the towns of Shaftsbury and Bennington in 1983 and 1981. The court authorized the trustee "to list for sale and convey the two foregoing parcels of land purchased at tax sale," and addressed the distribution of the proceeds from any such sale.

In 1990, in accordance with the quiet title action's judgment, Mr. Gerken, as trustee delivered a warranty deed to plaintiff in which he conveyed what was described again as "a certain piece of land." In the deed, Parcel One is clearly described by metes and bounds; Parcel Two of the 1990 deed is not described by metes and bounds, but refers to Parcel Two of the 1967 deed. Together, the parcels are described as "convey[ing] all and the same lands . . .

title to which was quited [sic] by a Judgment Order of the Bennington Superior Court In The Matter of Frederick A. Gerken, Trustee of Two Parcels of Land".

The dispute between the parties is whether this 1990 deed, under which the plaintiff acquired his property, in addition to conveying the *land* obtained under the 1965 and 1967 deeds, *also* conveyed the separate mineral estates  for non-conveyed land that were included in the 1965 deed.

In contrast to the previous deeds, which made reference to *all lands and interests* held by the grantor, and which specifically referred to both the 1965 and 1967 deeds, the language of the 1990 deed refers only to land, and only to the quiet title action.   At the conclusion of the description of property, the 1990 deed states that the intent is as follows:

> Meaning and intending hereby to convey all and the same lands and premises lying in the towns of Bennington and Shaftsbury, title to which was quited (sic)  by a Judgment Order of the Bennington Superior Court In the Matter of Frederick A. Gerken, Trustee of Two parcels of land, Docket no. S167-84 Bc, dated August 14, 1987.

The deed also made no specific reference to the mineral rights transferred in the 1965 deed. Without specific language granting the 1965 mineral estates in the deed, or some affirmative indication that the deed was meant to convey *all* rights and interests in land held by the trustee, it cannot be said that the 1990 deed grants anything more than the land it specifically describes.  See Am. Jur. 2d Deeds § 38 (explaining that "land granted and intended to be conveyed [must] be described with sufficient definiteness and certainty" and that the intended conveyance must be "identifiable from the words of the deed, aided by extrinsic evidence explanatory of the terms used or by reference to another instrument").

Finally, plaintiff claims that by not *reserving* the mineral rights to Parcels 4-7, the warranty deed grants them as a matter of law.  He argues that his position is supported by 53A Am. Jur. 2d Mines and Minerals § 185, which provides that "a valid mineral reservation or exception must contain words as definite as those required to convey title and, if they are not so, the whole property passes."  Section 185 instructs grantors as to the procedure for severing mineral rights from surface rights.  It is a correct statement of law, but only if the mineral rights have not *previously* been severed from the surface rights.  In the case where severance has already occurred, that severance creates "separate and distinct estates . . . which are held by separate and distinct titles." 53A Am. Jur. 2d. Mines and Minerals § 159.  Because the 1990 deed does not mention the mineral rights to Parcels 4-7, plaintiff did not receive those rights. The argument might have more validity if the mineral rights in question were the rights to the minerals underlying the lands that were actually conveyed to the plaintiff.  Parcels 4-7 were not conveyed in the 1965 deed; only their mineral rights were conveyed. The fact that the mineral rights in question related to lands that were not conveyed made it all the more necessary that in order to convey such an interest, specific, clear language be used.   No such language was used here.  To the contrary, the language in the trustee's deed clearly communicated an intent to convey only the land described, and no other rights.

**Conclusion**

It is clear from an examination of the record that plaintiff holds title to the lands that were conveyed to him. It is equally clear, however, that plaintiff does not hold title to the mineral estate to other lands originating in the 1965 deed from VKC to FVC.  The mineral estate to those lands passed to the trustee, Mr. Gerken via the tax sale, but was not conveyed to

plaintiff in the 1990 deed. The 1990 deed makes no reference to the mineral estate, and incorporates no additional documents that make reference to the mineral estate. Because plaintiff does not own the mineral estate, his property was not taken by defendants during the construction of the Bennington Bypass; therefore, he is not entitled to proceed to a compensation hearing. His motion for partial summary judgment must therefore be denied; and the defendants' motion for summary judgment must be granted.

ORDER

(1) Defendants' Motion for Summary Judgment (MPR #1), filed Apr. 21, 2011, is **_granted_**; and

(2) Plaintiff's Cross-Motion for Partial Summary Judgment (MPR #1), filed June 6, 2011, is **_denied_**.

Dated at Bennington, Vermont this 29th day of September, 2011.

_____
Katherine A. Hayes
Superior Court Judge