2004 VT 34

# James and Judith Creed, et al. v. Francis and Debra Clogston

[852 A.2d 577]

No. 02-426

Present: Amestoy, C.J., Johnson and Skoglund, JJ., and Crawford, Supr. J. and Gibson, J. (Ret.), Specially Assigned

Opinion Filed April 16, 2004

*Allan R. Keyes* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Plaintiffs-Appellees.

*Alison J. Bell* of *Langrock Sperry & Wool, LLP*, Burlington, and *Timothy L. Taylor* of *Meub Associates, Inc.*, Rutland, for Defendants-Appellants.

*Andrew W. MacLean, Christopher K. Rice*, and *Philip H. White* of *Wilson & White, P.C.*, Montpelier, for Amici Curiae Vermont Bankers Association and Vermont Mortgage Bankers Association.

¶ 1. **Amestoy, C.J.** In this appeal, we consider whether a restrictive covenant prohibiting the installation of "mobile homes, campers or trailers" for residential purposes prevents defendants Francis and

Debra Clogston from placing a "manufactured home" on their lot. The trial court found that the mobile home covenant in defendants' deed reflected an intent to exclude all non-site-built homes from defendants' neighborhood. The court explained that, regardless of the name given to defendants' home, it was a "mobile home" within the meaning of the restrictive covenant because it fell within the type of housing that the covenant sought to preclude. The court therefore granted permanent injunctive relief to plaintiffs, and ordered defendants to remove their home. On appeal, defendants argue that the trial court erred in ascertaining the intent of the parties to their deed. We agree, and reverse and remand for additional findings.

¶ 2. The material facts are largely undisputed. In March 2002, defendants purchased an undeveloped lot from Wales Realty Incorporated. Their deed contains the following covenants:

1. The use of this lot shall be restricted to one single-family dwelling.
2. This lot and dwelling shall be used and maintained for residential purposes only.
3. This lot shall not be subdivided.
4. No mobile homes, campers or trailers shall be installed for residential purposes, even on a part-time basis.
5. This lot shall not be used commercially or for business purposes.
6. No dwelling shall be constructed unless the cost above the foundation exceeds $60,000.

Mr. Clogston testified at trial that he discussed these covenants with a Wales Realty representative, John Bloomer, Jr., and informed Mr. Bloomer that he intended to place a manufactured home on the lot. Mr. Bloomer executed the deed.

¶ 3. Defendants' lot is located within a twenty-lot subdivision covering eleven acres. The original eleven-acre parcel was conveyed by Theodore and Charlotte Nicolet to Remo Segalla, Livio Segalla, and Leon Arrigo in 1963. The deed required, among other things, that the above-foundation cost of a dwelling equal or exceed $15,000 at the present purchasing price of the United States dollar. The deed did not contain a prohibition against mobile homes.

¶ 4. The twenty-lot subdivision was created in 1968 by the recording of a plat in the Rutland land records. At the time of subdivision's creation, there was no declaration of covenants nor any other express

scheme of development restricting the eleven-acre parcel. Between 1965 and 1969, nine lots were conveyed, and three additional deeds were granted correcting the boundaries of some of those lots. These twelve deeds contained the Nicolet covenants but they did not contain any additional covenants.

¶ 5. In 1969, the Segallas conveyed the remainder of the original eleven-acre parcel to Wales Realty. Wales Realty did not adopt a declaration of covenants, nor any other express scheme restricting the development of the remaining parcel. Instead, over a twenty-year period, between 1982 and 2002, Wales Realty conveyed eleven lots by eleven separate deeds. Wales Realty incorporated the Nicolet covenants by reference in these deeds, and imposed new covenants. All of the deeds conveyed by Wales Realty contain the same covenants found in defendants' deed, although some require an above-foundation cost of $50,000 rather than $60,000. The deeds provide that the enforcement of the covenants is the "responsibility, privilege, and right" of the owners of any lots that are subject to the covenants.

¶ 6. In April 2002, defendants purchased a 1600-square-foot single-level manufactured home from Moore's Auto. The home was delivered in two pieces on wheels that were temporarily attached to permanent I-beams. The two halves of the home were placed on and affixed to a concrete slab foundation, and were joined in the middle through a bolting system. Water, sewage, and electricity hookups were established. Workers placed siding on both ends of the home, finished the roof, hung doors and electrical fixtures, and finished the walls and floors. This process took approximately 150 hours to complete, and defendants were able to move in within approximately one week after their home was delivered.

¶ 7. Plaintiffs James and Judith Creed, Karen Harrison, Arlie Welch, Ray and Laura Wilburn, Jean O'Rourke, John and Jody LaFaso, Anthony and Lise Chioffi, and Diane Byrne reside in defendants' neighborhood and with the exception of Harrison, Welch, and the Wilburns,* their deeds contain the restrictive covenant prohibiting the installation of mobile homes. In April 2002, plaintiffs filed a complaint against defendants seeking injunctive relief, arguing that defendants' home violated the mobile home covenant.

¶ 8. After a trial, the court granted permanent injunctive relief to plaintiffs. The court concluded that the mobile home covenant in

---

* We do not address defendants' assertion that the trial court erred in concluding that these parties have standing to enforce the mobile home covenant because the remaining parties have standing.

defendants' deed was intended to prohibit non-site-built homes from defendants' neighborhood. In reaching its conclusion, the court began its analysis by considering the relationship between the terms "mobile home" and "manufactured home" under state and federal law. The court found that, although the term "manufactured home" had replaced the term "mobile home" under federal law in 1980, the Vermont legislature had not amended its statutes accordingly. Thus, the court reasoned, because the Vermont legislature had not adopted the term, the drafter's failure to use it in the deed was not dispositive of an intent to exclude such homes, particularly because the term was "relatively new" in 1982.

¶ 9. Examining the deed as a whole, the court found it significant that the deed required that no dwelling be "constructed" unless its above-foundation cost exceeded $60,000. Relying on a dictionary definition of the term "construct," the court found that the use of the term reflected the drafter's intent that "any home placed on the defendants' land be site-built, that is, ... constructed on site." The court found that defendants' home had not been "constructed" on their property, but instead had been constructed in a factory and then brought to the site.

¶ 10. Taking this provision together with the covenant prohibiting mobile homes, the court concluded that it was evident that the drafters of the covenant intended to create a neighborhood that contained only site-built homes. To implement this intent, the court refused to give the term "mobile home" a static definition. Instead, the court considered defendants' home a "mobile home" within the meaning of the restrictive covenant because it fell within the type of housing that the covenant sought to preclude. Based on its conclusion, the court granted permanent injunctive relief to plaintiffs, and ordered defendants to remove their home within six months. Defendants appealed, and pursuant to their request, the trial court stayed its order pending the resolution of this appeal.

¶ 11. On appeal, defendants assert that the trial court erred in concluding that their manufactured home violated the terms of the restrictive covenant in their deed. Specifically, they argue that: (1) the court erred as a matter of law in concluding that the terms of the mobile home covenant were ambiguous; (2) alternatively, if the covenant is ambiguous, the court erred as a matter of law by ignoring the uncontroverted and direct evidence of the parties' intent at the time the deed was executed; and (3) the court's finding that the mobile

home covenant was intended to prohibit manufactured homes was clearly erroneous.

¶ 12. We first address defendants' assertion that the trial court erred in finding the mobile home covenant ambiguous. According to defendants, the covenant is unambiguous because it plainly prohibits only those homes that are "moveable and transitory in nature," not those that are permanent and immovable. In support of this argument, defendants point to the use of the words "mobile" and "part-time basis" in the deed, as well as the grouping of the term "mobile home" with other dwellings that are "mobile" in nature. Defendants assert that the uncontroverted evidence shows that their home is "of a fixed and permanent nature," and no more movable than any "stick-built" home. Thus, they maintain that their home is not prohibited by the plain language of the mobile home covenant.

¶ 13. When the meaning of a restriction in a deed is clear and unambiguous, "there is no room for construction and the instrument must be given effect according to its terms." *Aiken v. Clark*, 117 Vt. 391, 393, 92 A.2d 620, 621 (1952). The trial court must determine, as a matter of law, whether an ambiguity exists. *Isbrandtsen v. N. Branch Corp.*, 150 Vt. 575, 577, 556 A.2d 81, 83 (1988). In making this determination, the court may consider the circumstances surrounding the making of an agreement. *Id.* at 579, 556 A.2d at 84. An ambiguity exists when "a writing in and of itself supports a different interpretation from that which appears when it is read in light of the surrounding circumstances, and both interpretations are reasonable." *Id.*; see also *Trs. of Net Realty Holding Trust v. AVCO Fin. Servs. of Barre, Inc.*, 144 Vt. 243, 248, 476 A.2d 530, 533 (1984) ("A provision in a contract is ambiguous only to the extent that reasonable people could differ as to its interpretation."). Although the trial court did not specifically state that it found the mobile home covenant ambiguous, its reliance on extrinsic evidence to interpret the deed implies that it reached such a conclusion. The question of whether an ambiguity exists is a question of law, which we review de novo. *Kipp v. Chips Estate*, 169 Vt. 102, 107, 732 A.2d 127, 131 (1999).

¶ 14. The term "mobile home" is not defined, and we conclude that it is subject to more than one reasonable interpretation. Defendants asserted that the use of the term "mobile home" in conjunction with "campers or trailers" was intended to restrict the use of obviously movable vehicles. Plaintiffs argued that the term "mobile home" included those homes labeled as "manufactured homes" under federal law. Plaintiffs also asserted that, regardless of its name under federal

law, defendants' home was a "mobile home" under Vermont law, and moreover, was a movable vehicle of the type intended to be restricted by the covenant. Because we cannot determine, as a matter of law, what the parties intended to prohibit under the mobile home covenant, we conclude that the covenant is ambiguous.

¶ 15. Assuming that the covenant is ambiguous, defendants next argue that the trial court erred in concluding that the mobile home covenant was intended to prohibit their manufactured home. Defendants assert that the court erred as a matter of law by focusing its inquiry on 1982, when Wales Realty first included the mobile home covenant in one of its deeds, rather than the parties' intent in 2002, when the deed was conveyed. According to defendants, the "uncontroverted and direct evidence" shows that the parties intended to allow defendants to place a manufactured home on their lot.

¶ 16. Defendants further argue that, because the court failed to focus on the parties' intent in 2002, its finding that the mobile home covenant was intended to prohibit manufactured homes is clearly erroneous. In support of this assertion, defendants argue that the drafter's failure to specifically include manufactured homes within the terms of the restrictive covenant is evidence of the drafter's intent not to encompass such homes. This is particularly true, according to defendants, in light of the dramatic changes in the housing industry between 1982 and 2002, and the developments in state and federal law reflecting these changes. Defendants also assert that the emerging trend in cases in other jurisdictions is to treat manufactured homes as distinct from mobile homes when interpreting the intent of restrictive covenants prohibiting the latter. Defendants acknowledge that these cases are highly fact-specific and thus of limited precedential value.

¶ 17. In construing a deed, the court must "give effect to the intention of the parties if it can be gathered from the language used when interpreted in connection with, and in reference to, the subject matter and purpose sought to be accomplished at the time the instrument was executed." *McDonough v. W.W. Snow Constr. Co.*, 131 Vt. 436, 441, 306 A.2d 119, 122 (1973); see also *Kipp*, 169 Vt. at 105, 732 A.2d at 129 (same); *Welch v. Barrows*, 125 Vt. 500, 504, 218 A.2d 698, 702 (1966) ("The intention of the parties, not the language used, is the dominating factor, and the circumstances existing at the time of the execution of the deed, the situation of the parties and the subject matter are to be considered."). The court may employ rules of construction as subordinate aids to discover the parties' intent. *Latchis v. John*, 117 Vt. 110,

112, 85 A.2d 575, 576 (1952). We have stated that "[w]hen doubt arises as to the extent of restrictive covenants, the rule applied is that 'restrictions will not be extended by implication to include anything not clearly expressed, and doubts must be resolved in favor of the free use of land.'" *Fassler v. Okemo Mountain, Inc.*, 148 Vt. 538, 542, 536 A.2d 930, 932 (1987) (quoting *Latchis*, 117 Vt. at 113, 85 A.2d at 577).

¶ 18. Because the mobile home covenant in defendants' deed is ambiguous, the question of what the parties intended to prohibit is a question of fact to be determined on all the evidence. *Kipp*, 169 Vt. at 107, 732 A.2d at 131. We review the trial court's findings of fact under the clearly erroneous standard. Thus, we will uphold the court's factual findings unless, taking the evidence in the light most favorable to the prevailing party, and excluding the effect of modifying evidence, there is no reasonable or credible evidence to support them. V.R.C.P. 52(a); *N.A.S. Holdings, Inc. v. Pafundi*, 169 Vt. 437, 438, 736 A.2d 780, 783 (1999).

¶ 19. In this case, the trial court found that the intent of the mobile home covenant was to create a neighborhood that contained only site-built, single-family homes. The court considered defendants' home to be a "mobile home" because it fit within the type of housing that the covenant sought to preclude. As discussed below, this finding was clearly erroneous. There was no declaration of covenants imposed before any lots within defendants' subdivision were sold, nor was a subsequent servitude created by existing property owners. Thus, the record does not support the trial court's finding that the covenant imposed a neighborhood-wide restriction. In the absence of any evidence of a common development scheme, the dispositive inquiry is what the parties to defendants' deed intended to prohibit at the time the deed was conveyed in March 2002. The trial court did not address this question, but instead focused its analysis on statutory definitions of the term "mobile home" and on Wales Realty's intent in 1982 when Wales Realty first included the mobile home covenant in one of its deeds. Because the trial court focused its inquiry on the wrong factual context, it did not make the findings necessary to resolve the dispositive question of what the parties to defendants' deed intended to prohibit under the mobile home covenant.

¶ 20. First, the record does not support the trial court's determination that the term "mobile home" could not be given a static meaning because the covenant was aimed at precluding a certain type of housing from existing in defendants' neighborhood. There is no general plan governing the development of defendants' neighborhood.

A "general-plan development" is a "real-estate development or neighborhood in which individually owned lots or units are burdened by a servitude imposed to effectuate a plan of land-use controls for the benefit of the property owners in the development or neighborhood." Restatement (Third) of Property — Servitudes § 1.7 (2000). General-plan developments "are generally created by developers who impose the servitudes before any lots or units are sold, but they may also be created by agreement among existing property owners." *Id.* cmt. a.

¶ 21. In this case, there was no declaration of covenants imposed before any lots within defendants' neighborhood were sold, nor was a subsequent servitude created by existing property owners. Instead, the record shows that, within defendants' subdivision, different covenants were imposed by different grantors at different times. Some deeds prohibit mobile homes, while others do not. Although Wales Realty included the mobile home covenant in all of the deeds that it conveyed, it was not obligated to do so. It was free to amend the terms of the mobile home covenant, just as it amended the covenant that required that the above-foundation cost of a dwelling equal or exceed $15,000. There is no evidence in the record to support the trial court's finding that the covenant was designed to exclude a certain type of housing from defendants' neighborhood, and this finding is therefore clearly erroneous.

■ ¶ 22. Absent a common development scheme, the dispositive inquiry is whether defendants' home is a "mobile home" as that phrase was intended by the parties to the deed "at the time the instrument was executed." *McDonough*, 131 Vt. at 441, 306 A.2d at 122. Although plaintiffs argue on appeal that the mobile home covenant in defendants' deed has become a "neighborhood covenant" due to "numerous overlapping transactions over the course of twenty years," the trial court made no such finding. The trial court focused its analysis on 1982, when Wales Realty first included the mobile home covenant in one of its deeds. The court found that the drafter's failure to incorporate the term "manufactured home" in the restrictive covenant was not dispositive of an intent to exclude such homes, particularly because "the term manufactured home was relatively new in the history of this type of housing in 1982 when the covenant was drafted." However, in the absence of any evidence that the parties intended to encompass such homes in March 2002, when the deed was conveyed, the court

erred in extending the deed's restriction by implication to include such homes. See *Fassler*, 148 Vt. at 542, 536 A.2d at 932.

¶ 23. The changes that have occurred in the manufactured housing industry within the past twenty years make the court's reliance on Wales Realty's intent as of 1982 particularly irrelevant to the disposition of this case. Indeed, the trial court noted in its opinion that "the quality and appearance of many modern mobile homes can and does exceed the quality and appearance of many site-built homes." In the absence of any findings as to what the parties to defendants' deed intended in March 2002 when the deed was conveyed, we must reverse and remand this case to the trial court for additional findings. See *Secretary v. Irish*, 169 Vt. 407, 419, 738 A.2d 571, 580 (1999) (where trial court failed to make finding essential to its conclusion, matter was reversed and remanded for additional findings).

*Reversed and remanded.*