2008 VT 78

**Amy OPPENHEIMER, Peter Oppenheimer and Judith Pierce v. David MARTIN, Duane Martin, Clara Peterson, Carol Parker, Claire Lisotte, Cora Curtis and Town of Rochester**

[956 A.2d 1137]

No. 07-320

¶ 1. June 4, 2008. This appeal concerns the location of a town highway in Rochester, Vermont. Plaintiffs, Amy Oppenheimer,

---

Peter Oppenheimer and Judy Pierce, contested the right of defendants, the Martins, to use the Oppenheimers' driveway to access their property, which borders the Oppenheimer property to the north. The trial court ruled in favor of defendants, holding that Town Highway 69 (T.H. 69), a public road, follows the course of what is today Oppenheimers' driveway, and plaintiffs appealed. We affirm.

¶ 2. The relevant facts are as follows. The Town of Rochester originally surveyed and opened T.H. 69 in 1861. At that time, the road ran northerly through what are presently the lands of plaintiff Pierce, continued north through what is today the property of the Oppenheimers, and finally continued northeasterly through what is now the property of the Martins, until it reached another town highway beyond the Martins' property line. In 1948, the Rochester Selectboard discontinued a portion of T.H. 69, describing the discontinued section as: "The road leading from the former Ralph Martin farm now set in the records to Hazel Vogt, to the former Ernest Morgan farm now set in the records to Allen and Martha Johnson; a distance of 1.09 miles, more or less." In 1970, the former Ernest Morgan Farm was subdivided by a successor-in-title. The southern lot of the former Ernest Morgan Farm is currently owned by Pierce; the northern lot is owned by the Oppenheimers. The Martins inherited their land from their predecessor-in-title, Elsie Martin. The Oppenheimer property abuts the Pierce property on the north, while the Martin property abuts the Oppenheimer property on the north.

¶ 3. In 2005, plaintiffs filed suit against defendants when they noticed the Martins using a driveway across Oppenheimers' property to access the Martin property to the north. The parties agreed that the Town of Rochester discontinued a portion of T.H. 69, but disputed whether or not the section of the highway that ran

across what is now Oppenheimers' property was part of the portion that was discontinued. Defendants contended that T.H. 69 begins at a junction with Maple Hill Road in the south, continues north through the Pierce and Oppenheimer properties, following the course of the driveway that currently runs north/south across Oppenheimers' property, and is discontinued at the Oppenheimer/Martin property line. Plaintiffs, on the other hand, claimed that T.H. 69 runs northerly from the junction with Maple Hill Road to a gate at the boundary line between the Pierce and Oppenheimer properties. Furthermore, they disputed defendants' placement of T.H. 69 along the route that is now Oppenheimers' driveway and instead claimed that the portion of the highway that used to run through the Oppenheimer property, which they claim was discontinued in 1948, ran along a stone wall to the west of and parallel to the current driveway, where a gully is now apparent.

¶ 4. The court heard testimony from and reviewed surveys conducted by Robert Townsend, surveyor for plaintiffs, and Norman Smith, surveyor for defendants. Townsend interpreted the term "farm" in the 1948 discontinuance to mean "farm buildings" and accordingly opined that T.H. 69 was discontinued from the Pierce/ Oppenheimer boundary line — where he was told the former Ralph Martin farmhouse was located — northward. By contrast, Smith interpreted "farm" to refer to the entire perimeter of the farm, and accordingly opined that the discontinuance began at the boundary between the Oppenheimer and Martin properties. Based on the evidence presented at hearing, the court determined that T.H. 69 was "discontinued in 1948 to the point where it crossed the boundary of the present day Oppenheimer/Martin properties," and that the highway continued to exist, following the route of the driveway

across Oppenheimers' property, as depicted by Smith in his survey, rather than along the gully to the west as plaintiffs and their surveyor, Townsend, had claimed. Plaintiffs appeal, challenging several of the trial court's factual findings and conclusions of law.

¶ 5. Plaintiffs argue first that the trial court erroneously adopted defendants' interpretation of the term "farm" in the 1948 discontinuance language. Specifically, they argue that when the term "farm" is used in road surveys it is meant to indicate farm buildings, rather than the boundary of the farm, as a monument. Plaintiffs, however, fail to provide any legal support for their contention. In construing the language of the discontinuance, the court was required first to determine whether an ambiguity existed. *Creed v. Clogston*, 2004 VT 34, ¶ 13, 176 Vt. 436, 852 A.2d 577. The court was not bound, however, to the four corners of the Selectboard's writing in determining whether an ambiguity existed; rather, it was allowed to look to the circumstances surrounding the construction of the discontinuance language. See *Isbrandtsen v. N. Branch Corp.*, 150 Vt. 575, 578, 556 A.2d 81, 84 (1988). Here, the court considered the construction of the term "farm" urged by the parties and the evidence supporting each sides' position. The court noted in its findings that a property boundary, such as that of a farm, "is deemed to be a natural monument for purposes of surveying." Furthermore, the court determined that the Selectboard was capable of providing specific descriptions when it intended to demarcate a building or a home as a monument. For example, in the discontinuance of other roads around the same time as that of T.H. 69, in 1948, the Rochester Selectboard described the termini of discontinued roads as: (1) "[c]ommencing on the Brandon Mountain road, nearly opposite the Clifford *camp*," (2) "[c]ommencing at Henry Thiemel's *house*," and (3)

"[c]ommencing ... east of Wesley Smith's *house.*" (Emphasis added.) In addition, defendants' surveyor, Smith, measured the distance along the old roadway across the Ralph Martin farm and the present Martin property from the southern property line of the former to the southern property line of the latter as 1.09 miles, which corresponded precisely with the stated length of the 1948 discontinuance. While the court did not explicitly state that the language was unambiguous, it found plaintiffs' interpretation of "farm," as referring to farm buildings, to be illogical and unsupported in light of the surrounding circumstances. As such, the court gave effect to the plain meaning of the term "farm" and accepted defendants' survey as more accurate. See *Creed,* 2004 VT 34, ¶ 13 (when language is unambiguous, Court must give effect to the language according to its terms). There was ample evidence to support the court's conclusion that defendants' survey was more accurate, and we will not disturb its decision.

¶ 6. Plaintiffs' next argument is based on a misapprehension of the court's conclusions of law. Plaintiffs claim that the court erroneously concluded that discontinuation of T.H. 69 at the Pierce/Oppenheimer property line would have adversely affected the Martins by effectively landlocking their property. Plaintiffs cite to *Okemo Mountain, Inc. v. Town of Ludlow,* 171 Vt. 201, 762 A.2d 1219 (2000), to support their argument that the Martins would have continued to enjoy a private right-of-access to the highway route despite its discontinuance and that the court was therefore unfairly prejudiced to rule in favor of plaintiffs based on its misconception that the Martin parcel was otherwise inaccessible. In fact, the court concluded only that:

> In deciding to discontinue a portion of this road, the selectboard determined that to do so

would not adversely affect the Martin property. To deny the property access to a public road would clearly have been an adverse effect within the contemplation of the board.

Thus, contrary to plaintiffs' contention, the court did not make any findings with respect to whether the Martins would have a private right-of-access to their property today, only that the Selectboard, in 1948, would have seen lack of access to a *public road* as adversely affecting the property owners. Furthermore, it is unclear whether in 1948 Vermont law would have granted a private right-of-access upon extinguishment of the public highway access to the property. Cf. *Okemo Mountain,* 171 Vt. at 207, 762 A.2d at 1225 (holding in 2000 that discontinuance of public access does not destroy private rights). Most importantly, however, there was sufficient evidence — irrespective of whether discontinuing T.H. 69 south of the Martin property line would adversely affect the Martins — for the trial court to determine that Smith's survey more accurately represented the discontinuance intended by the Selectboard.

¶ 7. Plaintiffs also challenge the court's factual finding that the original course of T.H. 69 followed the course of the driveway that presently runs north/south across the Oppenheimers' property. Instead, they argue that the overwhelming evidence supported a finding, urged by plaintiffs' surveyor, that the present-day gully along the stone wall on the Oppenheimer property represents the original location of T.H. 69. While there was testimony presented at hearing to support both positions, the court had discretion to determine the weight to attribute to the evidence, and we will uphold its factual findings unless clearly erroneous. See *DeGraff v. Burnett,* 2007 VT 95, ¶ 25, 182 Vt. 314, 939 A.2d 472. At trial, defendants' surveyor, Smith, testified to plotting the

1861 description of T.H. 69 to the same scale as an orthophotograph taken of the area and overlaying it onto the orthophotograph. Based on this exercise, Smith determined that the original highway lay somewhere underneath what is today the driveway across the Oppenheimers' property, but that it was impossible to plot its exact course because the Oppenheimers' predecessors-in-title had filled in and regraded over the old roadbed to create the current driveway. Furthermore, Smith testified that he saw no evidence that T.H. 69 was actually located to the west near the stone wall, as plaintiffs suggested. Finally, defendant Duane Martin testified that the course of the roadway across the Oppenheimers' property had remained unchanged since he began using it in the early 1960s. Despite plaintiffs' contention that defendants "offered no evidence to support th[eir] conclusion," as recounted above, defendants offered sufficient evidence for the court to determine that the current driveway follows the original course of T.H. 69, and the court was not required to credit plaintiffs' evidence to the contrary. See *id.* Consequently, we cannot say that the trial court's finding was clearly erroneous.

¶ 8. We also reject plaintiffs' final claim of error. Plaintiffs' argument relates to the fact that various post-1948 town highway maps attribute different lengths to the remaining portion of T.H. 69 — either 0.1 miles, 0.2 miles, or 0.22 miles. Plaintiffs essentially claim that the court erred in accepting the post-1973 maps as evidence that the current length of T.H. 69 is 0.2 miles — as opposed to the 0.1 miles indicated on earlier maps — because the maps were not based on any official Selectboard action to lengthen the remaining portion of T.H. 69. The court's only finding with respect to the maps, however, was that "[t]he length indicated for [T.H. 69] on various maps is not indicative of the status of the road as a

Town Highway but only of the length for which the state will reimburse the Town for maintenance." Thus, the court did not rely on the maps in determining the current length of the highway; rather, it relied on its interpretation of the 1948 discontinuance language. Plaintiffs' argument is therefore unavailing, and we affirm the court's factual findings and conclusions of law.

*Affirmed.*