*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2014-433

APRIL TERM, 2015

| | | |
|---|---|---|
| David D. Smalley | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Lamoille Unit, |
| v. | } | Civil Division |
| | } | |
| | } | |
| Stowe Mountain Club, LLC | } | DOCKET NO. 132-6-08 Lecv |

Trial Judge: Helen M. Toor

In the above-entitled cause, the Clerk will enter:

Plaintiff David D. Smalley appeals pro se from a superior court judgment in favor of defendant Stowe Mountain Club, LLC (SMC). Plaintiff contends the trial court committed multiple errors in rejecting his claim that portions of a golf course operated by SMC violate restrictive covenants in Smalley's deed. We affirm.

This is the second appeal to reach the Court in this matter. As set forth in the first appeal, Smalley v. Stowe Mountain Club, LLC (Smalley I), 2011 VT 51, 190 Vt. 53, the factual background is as follows:

> Smalley's property consists of a single-family residence on a 1.97 acre parcel located on Spruce Peak Road in the Town of Stowe. The property was acquired by Smalley's predecessor-in-interest, Nancy Cooke, in a 1959 deed from the Mount Mansfield Company (MMC), which operates the Stowe Mountain Resort. The deed contained sixteen separate "restrictions and conditions" to be "treated as covenants running with the land," nearly all of which were concerned with maintaining the property's residential quality. The first condition provided that no building on the property "shall be used for purposes other than a private dwelling." Others required that the cost of the residence and garage to be constructed on the property "shall be not less" than a certain dollar amount; that the "design and materials" for the exterior of all buildings to be constructed must be "approved in writing by an architect" designated by MMC; that "the premises and buildings constructed thereon shall at no time be used or occupied for the purpose of any trade, manufacture or business or as a school, hospital, charitable institution, hotel, inn, motel, cabin, boarding house, lodging house or place of public resort"; that no "billboards, advertising signboards or signs of any kind" were to be erected on the property; that no animals were to be kept on the property except for dogs, cats, or stabled horses; and that no timber or

trees were to be cut except as necessary to the residential development of the property.

Following the list of restrictions and conditions, the deed additionally stated:

> It is understood between the Grantor and the Grantee herein that the conditions, restrictions and covenants in this deed are for the purposes of this deed only and may vary from those in deeds of other property heretofore, now or hereafter owned by the Grantor, except that land within 200 ft. of the boundaries of the lot here conveyed to Grantee shall be sold and conveyed by the Grantor subject to the same conditions, restrictions and covenants as are contained in this deed.

Over the next several years, MMC subdivided and sold a number of additional residential lots on Spruce Peak Road in the vicinity of the Smalley property, all subject to the conditions and restrictions set forth in the 1959 deed. Most of the lots, like the Smalley parcel, adjoined land owned and used by MMC for resort purposes such as ski trails and access to the resort and resort parking. In 1977, Cooke and MMC entered into a second warranty deed "to correct any errors or deficiencies" relating to a boundary in the original deed. The corrected deed provided that it was "subject to certain covenants and restrictions of a residential nature as more specifically set forth" in the original 1959 deed. In January 1994, Cooke conveyed the property to Smalley. Like the corrected deed, the Smalley deed made the conveyance "subject to certain covenants and restrictions of a residential nature as more specifically set forth" in the original 1959 deed and, with one exception not relevant here, further provided that "[t]he balance of the covenants and restrictions" in the 1959 deed "shall remain valid and in effect."

In 2005 and 2006, SMC constructed a golf course in the area of Spruce Peak. Portions of two holes are located within 200 feet of the Smalley lot. The construction was preceded and facilitated by two transfers, one in 2003 in which MMC conveyed the golf course property to Spruce Peak Realty, LLC (SPR), a transfer which it characterized in its tax return as a tax-exempt capital contribution, and a second in 2004 when SPR in turn conveyed the property to its own limited liability company, SMC, similarly characterized at the time as a capital contribution.

The golf course opened for play in the summer of 2007. One year later, in June 2008, Smalley filed this action against SMC, alleging that the 2003 and 2004 transfers of property within 200 feet of his lot triggered the covenant prohibiting use of the property conveyed "for the purpose of any . . . business or . . . place of public resort." Accordingly, Smalley claimed that use of the property as a golf course violated his deeded property rights, and entitled him to a permanent injunction. SMC answered,

> denying the violation and raising a number of affirmative defenses, including estoppel, laches, and unclean hands.

Id. ¶¶ 2-6.

As we noted in Smalley I, the parties filed cross-motions for summary judgment. Smalley argued that the deed terms were clear and unambiguous, and essentially established a 200-foot non-commercial buffer around his property. SMC claimed, to the contrary, that the deed, "[c]onstrued as a whole, . . . evinced a clear and unambiguous intent to establish a common scheme to maintain the quality of lots sold by MMC to third parties for residential development, but there was never an intent to bar the resort itself from developing the property it retained." Id. ¶ 7. SMC also claimed that the golf-course property was not "sold and conveyed" in 2003 and 2004 within the meaning of the 1959 deed because there was no monetary consideration or real change of ownership; the transactions were merely inter-corporate capital transfers among affiliated entities, all of whom were wholly owned or controlled by their parent corporation American International Group (AIG). Thus, it claimed that the deed restrictions were never triggered by an actual "sale" within the contemplation of the parties. SMC maintained that it would defeat the parties' intentions to apply the "sold and conveyed" language to paper transactions in which the resort retained actual ownership and control of the property and sought to develop it through a wholly-owned affiliate. Id.

The trial court ruled in favor of Smalley, concluding that the deed restriction was "intended . . . to create a buffer zone" between the residential properties and resort, that the 2003 and 2004 transactions were plainly "sales," that SMC had failed to adduce evidence to support its affirmative defenses, and that further discovery was not required. Id. ¶ 9.

We reversed. While rejecting SMC's claim that the deed restrictions did not run with the land, we concluded that the trial court erred in concluding that they had created a "resort-free 'buffer zone' around the Smalley property." Id. ¶ 14. We noted that "[t]he covenants and conditions designed to maintain a high-end residential development, coupled with the absence of similar restrictions on land retained by the resort, could reasonably suggest that the parties did not intend to restrict development of land under the ownership or control of MMC." Id. ¶ 18. That fact, in turn, raised questions about the circumstances under which the covenant would be triggered by a conveyance of the resort property. We remanded to the trial court to allow additional discovery on the parties' intent with respect to the "sold and conveyed" clause in the deed, the exact nature of the transfers at issue, and SMC's affirmative defenses. Id. ¶ 22.

Following the remand, the parties conducted additional discovery, and the court held an evidentiary hearing over the course of two days in April and May 2014. The parties submitted post-trial memoranda, and the court issued a written ruling in July 2014. Apart from the evidence previously adduced, the court found that the only one piece of evidence that "sheds light on the intent of the covenants" was contained in correspondence between the parties and their attorneys preceding the 1959 conveyance from MMC to Smalley's predecessor-in-interest, the Cookes. The court found that the letters reinforced the conclusion that the deed restrictions were not intended to limit MMC's own resort activities on the land that it retained adjacent to the Smalley parcel. The court found that together with the covenants themselves, the letters supported a finding that the parties never intended that MMC's subsidiaries or successors would be barred from operating a resort, or that "a sale to another party running a resort would restrict that party from conducting resort activities on land retained by MMC." (Emphasis in original.)

3

The court also concluded that the transfers from MMC to SPR and SMC did not constitute a "sale and conveyance," as the transactions were simply "capital contributions" to wholly-owned subsidiaries. Accordingly, the court entered judgment for SMC. The court denied a subsequent motion to amend the judgment. This pro se appeal by Smalley followed.

Smalley raises numerous claims, most of which focus on whether the court erred in construing the meaning and intent of the deed restrictions, particularly whether the golf course land had been "sold and conveyed." We have previously ruled that the deed restrictions at issue are ambiguous. Smalley I, 2011 VT 51, ¶ 18. In resolving that ambiguity, the general rule is that, "[w]hen doubt arises as to the extent of restrictive covenants, the rule . . . is that restrictions will not be extended by implication to include anything not clearly expressed, and doubt must be resolved in favor of the free use of the land." Creed v. Clogston, 2004 VT 34, ¶ 17, 176 Vt. 436 (quotation omitted). Furthermore, where a covenant is ambiguous, "the question of what the parties intended to prohibit is a question of fact to be determined on all the evidence." Id. ¶ 18. We will uphold the court's findings in this regard unless they are clearly erroneous. Id.

Applying these standards to the record evidence, we find no basis to disturb the trial court's conclusion that the parties did not intend to restrict the resort activities of MMC on the land that it retained, nor did they intend "that a sale to another party running a resort would restrict that party from conducting resort activities" on the land retained by MMC. Several factors support this conclusion. First, as we observed in Smalley I, the covenants construed as a whole were basically intended to "create and perpetuate a high-end residential development," 2011 VT 51, ¶ 12, but do "not restrict MMC from using land that it . . . retained within 200 feet of the Cooke/Smalley parcel for resort activities." Id. ¶ 14. Accordingly, as the trial court here observed, it would defy reason to conclude that MMC was free to build the golf course in question, but when MMC sold the property to a third party "suddenly that new owner would have to remove" any golf-related activities as a violation of the covenants.

As the trial court also found, this conclusion finds additional support in some of the correspondence between the original parties and their attorneys in which they expressly negotiated the terms of the restrictive provisions at issue. Although not cited specifically by the trial court, a January 1959 letter from the purchaser proposed that the last two paragraphs of the deed specify that the same restrictions in the purchaser's deed "will apply to the purchasers of any two acre lots adjoining my property." This request was repeated in a subsequent letter dated July 24, 1959. MMC's attorney's response, in a letter dated August 18, 1959, indicated that MMC was resistant to the specific requirement that future sales of lots "be at least in 2 acre chunks," but assured the purchaser of MMC's intent to maintain the quality of the development and not do anything to depreciate its value.

Thus, while the two-acre minimum was not ultimately included in the 200-foot restrictive covenant, the parties' correspondence demonstrates that the covenant was designed and intended to apply to future sales of residential lots within 200 feet of the Cooke/Smalley lot, not to land retained and developed by MMC for resort activities or conveyed to a subsidiary or successor-in-interest for resort development. Thus, it does not apply to SMC. Contrary to Smalley's assertion, this conclusion does not represent a prohibited "reformation" of the deed. Rather, it is

4

an interpretation based on the parties' intent as determined from the language and extrinsic evidence.[*]

In light of our conclusion, we need not consider whether the trial court correctly determined, as an alternative basis of decision, that "sale and conveyance" as used in the deed does not apply to transfers specifically structured as in-house capital contributions, and whether the transactions here fall within this category. Nor need we consider Smalley's additional claims concerning his entitlement to legal fees and punitive damages.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Beth Robinson, Associate Justice

---

[*] In discussing the August 18, 1959 letter from the resort's attorney to the purchaser, the court found that, although "the exact restrictions being discussed cannot be discerned because the prior letter was not admitted in evidence," the correspondence supported the conclusion that the parties did not intend to apply the 200-foot restriction to the resort itself. Smalley asserts that the "prior letter," dated July 24, 1959, was, in fact, admitted, and the record supports his assertion. However, he does not demonstrate, nor does the record show, how the court's factual error was prejudicial. Indeed, as discussed, the correspondence as a whole supports SMC's position.