VERMONT SUPERIOR COURT
Orange Unit
5 Court Street
Chelsea VT 05038
802-685-4610
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 23-CV-02995

| Thomas Costello et al v. George Peet et al |
| --- |

## ENTRY REGARDING MOTION

Title: Motion for Summary Judgment; Motion for Summary Judgment as to Counts I, II, III and IV; (Motion: 3; 4)
Filer: Peter R. Decato; George Peet; Jack Gabriel Kauders
Filed Date: October 11, 2024; January 07, 2025

The motion is GRANTED IN PART and DENIED IN PART.

This is an action concerning the location and extent of a private right-of-way that runs across abutting properties. Plaintiffs Thomas Costello and Debra Costello have petitioned the court for injunctive relief and damages against Defendant George Peet. Plaintiffs claim that they have a right of way over Defendant's land to access their property. They contend that Defendant has blocked this access to their property, interfered with their use of the right of way, trespassed on the easement, and lessened their ability to enjoy and use their land. Defendant George Peet has opposed Plaintiffs' complaint and disputes the existence of a portion of the right-of-way in the location claimed by Plaintiffs. Both parties have moved the court for a summary judgment.

The court has reviewed the filings, and for reasons stated below, it **Denies** Defendant's Motion for Summary Judgment **in part** and **Grants in part**. Plaintiffs' Motion for Summary Judgment is **Denied**.

### Facts

For the purposes of the present motions, the following facts are undisputed, except as noted or otherwise qualified. Plaintiffs reside at 470 Red Oak Trail in the Town of Newberry. Defendant resides at the adjacent property, known as 400 Red Oak Trail, also in the Town of Newberry. Red Oak Trail runs north by northwest from the public highway known as Leighton Hill Road (Town Highway No. 7), which in turn parallels Interstate 91 along the west side. The parties' properties

have a common grantor in Kenneth and Elaine Alger (the "Algers") who developed the area from a single parcel in early 1971.

I. _A History of Land Transfers_

The facts of this case revolve in large part around the Algers' subdivision and sale of three parcels from a single lot done in the early 1970s.

a. _The Cicarelli Parcel_

In May 1971, the Algers conveyed what they purported to be a 15.25-acre parcel (+/-) to Anthony Cicarelli and James Cicarelli ("the Cicarelli parcel"). The lot, as described in the deed, is a long, skinny parcel, 390 feet wide on the northern and southern ends, 1750 feet long on the eastern side and 1650 feet long the western side.

The deed reserved a right-of-way over this parcel for the Algers as grantors:

> Excepting and reserving and saving herefrom a certain right of way situate [sic] at the southerly part or portion of these premises herein conveyed, which right of way commences from the southeasterly portion of the land herein conveyed and running in the westerly direction to the southwesterly portion of the premises herein conveyed to and adjoining other land of these grantors.

_Def. Mot. for Sum. J at Ex. A._

b. _The Peet Parcel_

Two months later, on July 8, 1971, the Algers conveyed another plot of land from the larger parcel to Herschel Tress and Ellen Tress. This is the parcel currently owned by Defendant and will be referred to as the "Tress-Peet parcel." The Tress-Peet parcel, as described in the deed, is a roughly square plot of 10 acres that shared its eastern boundary with the Cicarelli's western line, running from the southern-most boundary point north for 550 feet, then turning west and running 835 feet. The result is that the Tress-Peet parcel and Cicarelli parcel share a common boundary for 550 feet at which point the Tress-Peet boundary ends and turns west while the Cicarelli property continues for approximately 1200 more feet to the north.

The deed to the Tresses also reserved a right-of-way over the parcel for the Algers as grantors:

Excepting, reserving and saving therefrom a certain right-of-way, situate and commencing at the northeasterly portion of the premises conveyed or from the westerly boundary of said Cicarelli, thence proceeding in a northwesterly direction across the northeasterly portion of the premises herein conveyed to the south side of other land of these grantors, which right-of-way follows the present existing wood road.

*Pltf. Mot. for Sum. J. at Ex. 1.*

c. *The Costello parcel and Undisputed portions of the Right-of-Way*

After this second transfer, the Algers still owned a portion of their original parcel located north of the Peet parcel and west of the Cicarelli parcel. Through the two deeds described above, the Algers retained a right-of-way to their property. The undisputed portions of this right-of-way come up from Leighton Hill Road (Town Road No. 7) and follow the path currently labeled as the Red Oak Trail, a private right-of-way that serves the downhill neighbors to east, as well as the Tress-Peet parcel before running north toward the Cicarelli parcel and the Costello parcel where the location of the right-of-way is disputed.

II. *An Issue with the Size of the Parcels*

In the fall of 1971, the Cicarellis moved to divide their parcel into three 5-acre lots and learned that their lot was 3.25 acres short of the promised 15.25 acres.[1] This was based on an October 1971 survey prepared by George Bedard that found the Cicarelli and Peet parcels did not match up on the ground to their deed descriptions as the original Alger parcel was not wide enough to encompass both the 835-foot width of the Peet parcel and the 390-foot width of the Cicarelli parcel given the width of the Alger lot. To give the Peet parcel its full 835-foot length, Bedard had to bend the Cicarellis' western boundary. The result was an inward bend to what should have been an otherwise straight boundary.

Cicarelli, according to his affidavit, discussed the shortage and the boundary issue with the Algers. The result appears to be a readjustment of land, and the Cicarellis' surveyor, George Bedard prepared a revised survey plan in November 1971. In this plan, the portion of the Cicarellis' western boundary line north of the Peet parcel was expanded so that the Cicarelli parcel now also abutted a

---

[1] In his reply to Plaintiffs' Objection to Defendant's Motion for Summary Judgment, Defendant has included an affidavit by Mr. Anthony Cicarelli (filed Nov. 25, 2024). Plaintiffs have not disputed this evidence provided by Defendant. The court admits these facts and documents provided by Mr. Cicarelli for the purposes of this motion.

portion of the Peet parcel's northern boundary on its eastern side in an L-shape. According to Cicarelli, this transfer constituted approximately five additional acres.

It is unclear from the exhibits how and when the Algers formally transferred the five-acres to the Cicarellis or how the Cicarellis may have acknowledged this boundary-line adjustment to the Algers or the Tresses. Mr. Cicarelli's affidavit references and includes a March 4, 1972 quit claim deed from John Morale to the Cicarellis for the five acres, which refers to an earlier deed from the Cicarellis to Morale from March 3, 1972. These deeds, however, appears to be part of a straw deed conveyance to and from the Cicarellis' lawyer.[2] It does not explain how and under what terms the Algers transferred this 5-acres of land to the Cicarellis.

Nevertheless, the Morale deed to Cicarelli includes the following language, which appears to reference the prior Alger reservations:

> This conveyance also includes a certain right of way and is also subject to any right of way in common with otherlawful [sic] users as referred to in the above mentioned deeds.

> This description to these premises are more particularly depicted in a survey map entitled "Land Surveyed for Anthony Cicarelli James Cicarelli and Louis DeMatteo Jr., Newbury, Vermont, Scale 1" = 100' November 1971. Bedard and Hemond, Essex Jct., Vt.

*Cicarelli's Aff. at Ex. D.*

The survey referenced in the deed is November 1971 survey prepared by George Bedard. This survey illustrates several relevant developments that appear to have happened by the consent of the parties. First, it portrays the Cicarelli lot with the inward bend along its western boundary to allow for the Tress parcel, and it also shows the additional land added to the Cicarelli lot north of the Tress parcel. Bedard's November 1971 survey also shows an "access road," entering the southeastern part of the Peet parcel, across the common boundary line with the Cicarellis and then running northeast until crossing from the Peet parcel back to the then-newly added portions of the Cicarelli parcel. This layout is facially consistent with the description of the right-of-way from the earlier Cicarelli and Tress deeds. Compare Def. Ex. A and B, with Pltf. Ex. 1.

---

[2] See 7 Richard R. Powell, Powell on Real Property (MB) ¶ 616[3], at 51-7 (Patrick J. Rohan ed., 1998). This was a common technique used at the time to create the unities necessary to create tenants by the entirety. See, e.g., *Preston v. Chabot*, 138 Vt. 170, 172 (1980); *Methodist Church of Sandgate v. First Nat. Bank of N. Bennington*, 125 Vt. 124, 128 (1965).

### III. *Current Owners*

The Tresses held the Peet parcel for 47 years and sold it to Defendant Peet on May 4, 2018. The deed between Tress and Peet provides that "[s]aid lands and premises have the benefit of and subject to certain rights of way and utility easements as set out in the aforesaid deed . . . ." Pltf. Ex. 3. Defendant's parcel is thus expressly burdened by the same right-of-way as established by the Algers in their original conveyance to the Tresses.

While the parties have not submitted specific deed evidence, it is uncontested that Mr. Cicarelli conveyed his parcel to Lisa Marie Acerra through a deed dated May 1, 2023. Per the parties' stipulation, Ms. Acerra has been joined as an additional defendant in the action as a successor to the Cicarellis' interests in the disputed easements. Entry regarding Motion (entered Feb. 20, 2024).

In 1972, the Algers sold their remaining parcel adjacent to the Peet and Cicarelli parcels to Raymond W. Elmore and John H. Spillner, who transferred it to Coleman D. Costello and Anne Joan Costello on January 8, 1977. Pltf. Ex. 2. On March 29, 1989, the Costellos conveyed the property to Eileen Dietzel, Joanne Conneely, Thomas B. Costello, who is one of the plaintiffs here, and Coleman C. Costello.[3] Id.

This last Warranty Deed of March 1989 included the following language:

> The premises to be conveyed herein are more particularly described and depicted on a certain Survey Map, entitled "Land Surveyed for Kenneth Alger, Newbury, Vermont Scale 1"=100', March, 1972, Bedard & Hemond, Inc. Burlington Vt." as follows
>
> *     *     *
>
> This conveyance also includes a right to use a certain right of way which commences on the westerly side of Town Road No. 7, over land previously owned and conveyed by these grantors connecting these premises.

Id.

### IV. *Right-of-Way and Spur*

The Costello Plaintiffs currently have a house situated at the southeast corner of their lot near the point where their parcel, the Peet parcel, and the small leg of the L-shaped Cicarelli parcel

---

[3] Based on Plainitff's representations and statements, the Court understands this transfer to be from the Costello parents to their children.

meet. On the ground there is a driveway going west as a spur from the undisputed portions of the right-of-way directly from the northern part of Peet's parcel directly to the Costello parcel. There is also evidence that the original right-of-way continues north from Peet's parcel beyond the spur. These two segments are illustrated in a plan prepared by Truline Land Surveyors, Inc. in 2022 that purports to show "north, east, and west boundaries" for the Costello Plaintiffs. In comparing the 2022 plan with the November 1971 Bedard plans, the two appear to depict the same "common right-of-way" in the same location running north across the Peet parcel onto the Cicarelli parcel before it curves west to the Costello parcel. Truline identifies this portion as the "'access road' as identified on Cicarelli survey plan." Pltf.'s Ex. 1.

The Costellos in their statement of undisputed facts represent that they have used the right-of-way and the spur since their family first took ownership of the parcel in 1977. Plaintiffs claim that they have always used the spur to access their property as the original right-of-way beyond the spur is impassable. Plaintiffs represent that this is their only way to access the property and has been since 1977. Plaintiffs also state that they did improvements to the access to their house site in 2013. It is unclear from Plaintiffs' declaration when their house was constructed or what the 2013 "improvements" were.

V. *Parties' Claims*

In their petition, Plaintiffs seek a preliminary injunction (Count I); a permanent injunction (Count II); interference with use of the right-of-way (Count III); trespass (Count IV); private nuisance (Count VI); and promissory estoppel (Count VI). Defendant has filed a single counterclaim for abuse of process.

## Standard for Summary Judgment

> In order to succeed on a motion for summary judgment, the moving party must satisfy a stringent two-part test: first, no genuine issue of material fact must exist between the parties, and second, there must be a valid legal theory that entitles the moving party to judgment as a matter of law.

*Price v. Leland*, 149 Vt. 518, 521 (1988) (citing V.R.C.P. 56(c); *Gore v. Green Mountain Lakes, Inc.*, 140 Vt. 262 (1981)). "An issue of fact 'is material only if it might affect the outcome.'" *In re Est. of Fitzsimmons*, 2013 VT 95, ¶ 13, 195 Vt. 94 (citing *N. Sec. Ins. Co. v. Rossitto*, 171 Vt. 580 (2000) (mem.)). "The moving party has the burden of proof, and the opposing party must be given the benefit of all reasonable doubts and inferences in determining whether a genuine issue of material

fact exists." *Price v. Leland*, 149 Vt. at 521 (citing *Cavanaugh v. Abbott Laboratories*, 145 Vt. 516 (1985), *abrogation on other grounds recognized by State v. Atlantic Richfield Co.*, 2016 VT 61, 202 Vt. 212). In other words, on summary judgment, the court "must consider the facts presented in the light most favorable to the nonmoving party." *Madkour v. Zoltak*, 2007 VT 14, ¶ 12, 181 Vt. 347 (citing *Bacon v. Lascelles*, 165 Vt. 214 (1996)). However, the nonmoving party "bears the burden of submitting credible documentary evidence or affidavits sufficient to rebut the evidence of the moving party." *Mahmutovic v. Salvation Army*, No. 2020-056, 2020 WL 5269952, at *2 (Vt. Sept. 4, 2020) (unpublished mem.) (citing *Ziniti v. New England Cent. R.R., Inc.*, 2019 VT 9, 209 Vt. 433). Bare allegations alone do not suffice to meet this threshold. See *Webb v. Leclair*, 2007 VT 65, ¶ 14, 182 Vt. 559 (mem.). Finally, when there are cross-motions for summary judgment, "both parties are entitled to the benefit of all reasonable doubts and inferences when being considered as the nonmoving party." *In re Mountain Top Inn & Resort*, 2020 VT 57, ¶ 18, 212 Vt. 554 (quoting *Vt. Coll. of Fine Arts v. City of Montpelier*, 2017 VT 12, 204 Vt. 215).

## Conclusions of Law

In his Motion for Summary Judgment, Defendant makes two primary arguments. The first argument is that because of the issue with the overlapping deeds, the Algers did not have the right to reserve the easement in the Tress deed because the land had already been deeded to the Cicarellis, and a party cannot deed or reserve what they do not have. It is not disputed that this general principal is both correct and well-established in Vermont law. See, e.g. *Vermont Shopping Ctr., Inc. v. Pettengill*, 125 Vt. 145, 148–49 (1965) (citing *Barr v. Guay*, 125 Vt. 1 (1965)) (holding that regardless of the descriptions and boundaries that may be described in the deed, the grantor's power to convey was confined to what he then owned.").

The limitation on this principle when applied to the specific facts here is that the Algers reserved easements in both the Tress and Cicarelli deeds, and the reservation made with the Cicarelli deed occurred in a moment when the Algers had full ownership of the land. The reservation in the Cicarelli deed is broad enough to encompass a reservation of an easement for any portion of the land deeded to the Cicarellis to allow access to the Algers land. Therefore, regardless of whether the disputed land was owned by Tress or Cicarelli, the Algers had expressly reserved an easement from both deeds for either of these parcels. Therefore, the Court cannot determine as a matter of law that the Algers' reservation fails. In fact, the double reservation indicates that the easement was

properly reserved and that the Costello Plaintiffs, as the Algers' successor in title, have the right to this easement, regardless of whether it arises from the Cicarelli deed or the Tress deed.

For these reasons, the Court concludes that as a matter of law the Costello Plaintiffs have a right to travel along the right-of-way now known as Red Oak Trail from Leighton Hill Road over the lands of Peet.[4] For these reasons, Defendant's Motion for Summary Judgment on Counts I and II are **Denied**. Defendant admits that Plaintiffs have a right-of-way from Leighton Hill Road to their property. The question, then becomes what type of relief are Plaintiffs entitled to receive.

This is the core of Defendant's second argument. The central dispute in this case concerns the portion of the right-of-way after it passes Peet's house. Currently, there is a spur running from the original right-of-way, across the northern part of the Peet property directly to the Costello lot. There is also a segment, which Plaintiffs' surveyor has label a continuation of the common road.

"A right-of-way is generally defined as a right of passage over another person's land." *Hunsdon v. Farrar*, 128 Vt. 410, 414 (1970). A right-of-way is generally considered to be an easement. See *Gladchun v. Eramo*, 2023 VT 5 ¶ 4, n.3, 217 Vt. 481. An easement, in turn, is "an interest in land consisting in the right to use or control the land . . . for a specific limited purpose." *Gladchun v. Eramo*, 2023 VT 5, ¶ 11, 217 Vt. 481 (quoting *Wagner v. Crossland Constr. Co.*, 840 N.W.2d 81 (N.D. 2013)). The interpretation of an express easement is a question of law. *Post & Beam Equities Grp., LLC v. Sunne Vill. Dev. Prop. Owners Ass'n*, 2015 VT 60, ¶ 56, 199 Vt. 313 (citing *Creed v. Clogston*, 2004 VT 34, 176 Vt. 436). In that interpretation, the court looks to the language of the written instrument as the assumed declaration of the intent of the parties. *Gladchun v. Eramo*, 2023 VT 5, ¶ 12 (citing *Kipp v. Chips Est.*, 169 Vt. 102 (1999)).

> Our master rule in construing a deed is that the intent of the parties governs. In ascertaining intent, we must consider the deed as a whole and give effect to every part contained therein to arrive at a consistent, harmonious meaning, if possible. A deed term is ambiguous if reasonable people could differ as to its interpretation. If a writing is unambiguous under this standard, we must enforce the terms as written without resort to rules of construction or extrinsic evidence.

*Brault v. Welch*, 2014 VT 44, ¶ 11, 196 Vt. 459 (citing *DeGraff v. Burnett*, 2007 VT 95, ¶ 20, 182 Vt. 314). In other words, "[o]nly after finding reasonable people could differ as to an instrument's

---

[4] Defendant concedes this point on page 4 of his January 4, 2025 Memorandum in Opposition, where he states: "Defendant does not question the fact that Plaintiffs have a right of way from the westerly side of [Leighton Hill Road] to their property."

interpretation do we consider evidence outside the instrument's four corners." *Beldock v. Town of Charlotte*, 2010 VT 74, ¶ 10, 188 Vt. 345 (2010) (citing *DeGraff*, 2007 VT 95, ¶ 20).

The Court concludes that the spur in this case is not part of the original common right-of-way that was reserved by the Algers through their deeds to the Tresses and the Cicarellis. The undisputed expert opinion of Thomas Otterman, along with Plaintiff's Truline Survey, and the contemporaneous Bedard survey plans all show that the original right-of-way easement reserved by the Algers as running north, back in the Cicarelli parcel, and then curving into the Costello parcel. The Court finds that this location is consistent with the "Wood Road" and that there is no reasonable disputed between this "wood road" and the originally intended easement location.

The Court's inquiry, however, does not end at this historical determination. Instead, it must go to Plaintiffs' filings and arguments concerning their use and justification for the spur. Plaintiffs make two fact-specific arguments on this count. First, they allege that the spur as it presently exist has existed for more than 40 years. Second, they suggest that this spur reflects the historic reality of the site and that the spur is actually the right-of-way by consent of the parties.

Each of these arguments carries a different legal framework and set of burdens. The first is a claim for prescriptive easement rights to the spur by virtue of its long-standing existence and its open, notorious, and hostile creation and use. As the Vermont Supreme Court has noted the elements for a prescriptive easement are essentially the same as the elements for adverse possession. *Community Feed Store, Inc. v. Northeastern Culvert Corp.*, 151 Vt. 152, 155–56 (1989). To establish a claim for prescriptive easements right, a party has to assert evidence of the specific nature of the actual use. Id. at 156. This is a fact-specific inquiry that requires first and foremost pleadings to put the opposing party on notice of the claim and second sufficient factual evidence to demonstrate the nature of the use. Given their factual nature, such claims do not normally lend themselves to summary judgment motions.

In this case, Plaintiffs cannot assert a claim for prescription without first providing Defendant with the pleadings necessary to establish the prima facie elements of the claim and put Defendant on notice that Plaintiffs are claiming ownership of the easement through a claim for prescriptive rights to the easement.

The Court understands Plaintiffs' second argument to be asserting a type of acquiescence claim. From the statement of undisputed material facts, Plaintiff appears to be arguing that the

easement as originally laid out proved to be unworkable as a route of access and that the parties, specifically the Tresses as the owners of the dominant estate, through their statements or actions allowed Plaintiffs' predecessors in title to move the easement to its current spur configuration. Under this argument, Plaintiffs are effectively asserting that the original easement was given up by the parties in lieu of the current spur, and Plaintiffs are using the spur in lieu of the common road because their rights to the common right-of-way shifted by consent at the outset or near the outset of their predecessor's use.

This acquiescence claim has precedent in Vermont law. *Sweezey v. Neel*, 2006 VT 38, ¶ 10. But like the claim for prescription, an acquiescence claim is a fact-intensive determination where the party asserting the easement rights must show how the parties' actions and statements embodied the mutual consent and acquiescence necessary to establish the new easement location as a matter of law. In this case, Plaintiff has provided general statements that would suggest such agreement, but there was very little admissible evidence of specific actions or statements by the Tresses that would establish this particular claim.

As with the prescription claim, Plaintiff has not specifically pled this claim, and the Court finds that while Plaintiff has filed two claims for injunctive relief, neither is sufficient to put Defendant on notice of this acquiescence claim. Plaintiff would have to state the elements of the claims and put forward enough information to establish a prima facie case. To that end, the Court cannot on the record and with the lack of pleadings grant summary judgment on either the prescriptive easement or the acquiescence claims. For these reasons, Plaintiff's Motion for Summary Judgment is **Denied.**

The Court will further note that there is at least one related issue that may affect the parties' rights in this case and will require additional factual development. The various deeds and affidavits demonstrate that there was an initial error by the Algers in how the parcels were laid out and deeded to the parties. From the evidence, it appears that portions of the Peet parcel were initially transferred to the Cicarellis with the July 8, 1971 deed. The Court infers this from both the original Cicarelli deed descriptions, which envisions a trapezoidal shaped lot with east and west side running straight and parallel, as well as the Bedard survey plans that show these lines to be incompatible with the actual geometry of the lot. Bedard's conclusion in 1971, which Thomas Otterman examines in his expert opinion, and which has not been factually challenged by any party, was that the only way

for the Peet parcel to exist in the ten-acre configuration, with metes and bounds given it in the deed, would be remove land from the Cicarelli parcel and give it to the Peet parcel.[5]

From this situation, there appears to have been some accommodation reached between the Algers, the Tresses, and the Cicarellis. The problem is that there is no definitive or controlling deed or set of deeds that have been submitted to show how this accommodation was accomplished. Looking to the October and November 1971 Bedard survey plans, it appears that the Cicarellis agreed to cede certain portions of their land to the Tresses in exchange for additional land from the Algers. If this was the case, then the parties would have been obligated to memorialize this adjustment through deeds as the Bedard surveys alone are insufficient as a matter of law to convey property. *Withington v. Derrick*, 153 Vt. 598, 603–04 (1990) (noting that a deed controls the conveyance of land, but a survey incorporated into a deed is given "considerable weight in determining the true description of the land").

If there are no deeds, then the problem, at least for Peet and Acerra, as successor to the Cicarellis, is that these adjustments have not been memorialized through a legal conveyance, and the parties have what they were originally deeded. If this is, in fact the case, then the parties would likely need to establish the boundaries through acquiescence. *O'Neil v. Buchanan*, 136 Vt. 331, 332–33 (1978) ("The law of Vermont is that acquiescence for longer than fifteen years by neighboring property owners in the treatment of a particular line as the boundary between their parcels will conclusively establish that line as the boundary.").

This issue is relevant, in part, because if there is no acquiescence and no deeds, then there is a question as to whether Defendant Peet has the right to challenge the Costello Plaintiffs' use of the easement or spur as much of it lies on land that would not be his, but rather, Defendant Acerra's.

Given the historical records already presented, this does not seem to be a likely outcome, but it underscores the importance of understanding the somewhat convoluted development of these parcels. It also underscores any argument that Plaintiffs may put forward on their own acquiescence claims as it demonstrates a pattern of informality and failing to properly deed and record adjustments and post-sale transactions.

---

[5] Of course, this is a matter of perspective. It does not appear that the Cicarellis were under any obligation to cede the land to Tress.

Lastly, the Court will address Plaintiffs' trespass claim (Count IV). The Vermont Supreme Court has succinctly opined that a trespass occurs when "[a] person . . . intentionally enters or remains upon land in the possession of another without a privilege to do so." *Jones v. Hart*, 2021 VT 61, ¶ 66, 215 Vt. 258 (citing *Harris v. Carbonneau*, 165 Vt. 433 (1996)). In their petition, Plaintiffs claim that "Defendant has entered onto property owned by Plaintiffs" and that "Plaintiffs possess the property by virtue of the existence of the easement." Pls. Pet. for Prelim. and Perm. Inj. at 7. However, the undisputed language of the deed accords Plaintiffs "a right to *use* a certain right of way . . . ." Pls. Pet. Ex. at 3 (emphasis added). Plaintiffs have not alleged that Defendant would not have the privilege to enter the right-of-way located on his land. Plaintiffs' trespass claim against Defendant fails as a matter of law. Defendant's Motion for a Summary Judgement, as it pertains to Plaintiffs' Count IV, Trespass, is **Granted**.

### ORDER

Based on the foregoing, Defendant's Motion for Summary Judgment on Plaintiffs' Claims for Injunctive Relief are **Denied**. Defendant's Motion for Summary Judgment on Plaintiffs Claim of Trespass is **Granted**, and the claim of Trespass is **Dismissed**. Plaintiffs' Motion for Summary Judgment is **Denied** for lack of pleadings on the two claims offered for judgment.

The Court will set this matter for status conference with the parties to discuss next steps in light of the Court's ruling and any discovery, mediation, or pleading deadlines that have been delayed while these motions have been pending.

Electronically signed on 2/13/2025 2:34 AM pursuant to V.R.E.F. 9(d)

Daniel Richardson
Superior Court Judge

Vermont Superior Court
Filed 02/13/25
Orange Unit